GEORGE MCMILLAN AND FLORANCE D. EATHERLY, EXECUTORS, ETC., v. EDWARD W. BISSELL AND MARGARET A. BISSELL.

*Deed—Mortgage—Evidence.*

1. A deed absolute on its face may be shown to be defeasible by *parol* upon adequate proof.
2. Upon a review of the testimony in this case, the Court was equally divided as to the *intention* of the parties in executing the deed claimed by complainants to have been designed as a mortgage, and the decree of the lower court in favor of *defendants* was affirmed under the statute.[1]

Appeal from Wayne. (Jennison, J.) Argued April 9, 1886. Decided October 14, 1886.

Bill filed to have a deed *absolute* on its face declared a mortgage, and for foreclosure. Complainants appeal. Affirmed by an equal division of the Court. The facts are stated in the opinions.

*D. C. Holbrook (Charles A. Kent,* of counsel), for complainants:

The question whether the deed was absolute or a mortgage is to be determined by the agreement when it was taken, which could not be changed by any subsequent course of conduct short of a new agreement: 1 Jones, Mortgages, § 276.

Though a mortgage, still, no written defeasance having been given, the deed gives the grantee a right to possession until redemption: *Ferris v. Wilcox,* 51 Mich. 105, and cases cited.

*Henry M. Duffield,* for defendants:

---

[1] How. Stat. § 6420. As to effect of such affirmation, see *Lyon v. Ingham Circuit Judge,* 37 Mich. 379.

Even if the court could find that the deed was intended as security, the amount due thereon would be payable only in a reasonable time, or after a demand and refusal of payment; yet the bill fails to allege either of these facts, nor is any proof offered to establish them, hence no decree can be made as prayed: *Todd v. Campbell,* 32 Penn. St. 250-3.

The subject of parol defeasances is fully treated in 1 Hilliard, Mortgages (4th ed.), 50-67.

The admission of parol testimony in this class of cases is to interfere between the debtor and creditor to prevent oppression: *Emerson v. Atwater,* 7 Mich. 12; *Barber v. Milner,* 43 Id. 248; *Swart v. Service,* 21 Wend. 36.

The burden is on the mortgagor, and any doubt is solved in favor of the deed being what it purports to be: Jennison, Ch. Pr. 465, and cases cited; *Van Wert v Chidester,* 31 Mich. 209; *Johnson v. Van Velsor,* 43 Id. 214; *Tilden v. Streeter,* 45 Id. 533.

SHERWOOD, J. Complainants are the executors of the last will of Hugh Moffat, deceased. The defendant Margaret A. Bissell is the daughter, and her husband, the defendant Edward W. Bissell, the son-in-law, of said deceased.

On February 3, 1883, the defendants conveyed by warranty deed certain real estate in Detroit to Mr. Moffat.

·The complainants claim that the deed was given as security for indebtedness of Edward W. Bissell to Moffat, and to secure Moffat for indorsements he had made for Bissell. The executors bring this suit to have the deed decreed to be a mortgage, and to foreclose the same as such, against the property described therein, and for a sale thereof to satisfy the claim of the estate under the mortgage deed, and for such other relief in the premises as may be just and equitable; and they aver that the amount due and unpaid upon the said lien on the twenty-second day of November, 1884, was $30,290.48.

The defendants both appear and answer the bill. No question is made but that the amount claimed is due complainants upon their theory of the case.

The defendants deny that the deed, when given, was intended as a mortgage, and claim that it was given upon an unconditional sale of the property by the Bissells to Moffat, and the conveyance was intended to be absolute, and was received by Moffat in payment of Edward W. Bissell's indebtedness to him; that the consideration in the deed was placed at $65,000, and was the real consideration, and that the estate of Moffat is indebted to Edward W. Bissell in the sum of about $5,000; that the consideration for the property conveyed was the prior incumbrance upon it, and Mr. Bissell's indebtedness to Moffat; and that said $5,000 was the amount of the consideration left after deducting said incumbrance and indebtedness.

Moffat died the sixth day of August, 1884.

No question is made upon any of the probate proceedings, nor as to the right of the complainants to take the proceedings had in this case, under their theory of the rights of the parties.

The case was heard in the Wayne circuit, and the complainants' bill was dismissed.

The complainants appeal.

The will of Hugh Moffat is dated February 1, 1884. The following extracts contain all the provisions relating to the defendant Mrs. Margaret A. Bissell, viz.:

"*Article 5.* The rest and residue of my estate, real and personal, I hereby give, devise, and bequeath as follows:

"1. To my son Addison Moffat, and to my daughters Mrs. Isabella G. McMillan and Alice E. Moffat, of Detroit, aforesaid, each one equal share thereof, to have and to hold the same, and to their heirs.

"2. To my daughter Margaret A. Bissell, wife of Edward W. Bissell, to have and to hold the same during the term of her natural life only, one share thereof, and upon her decease to her children and to the issue of any deceased child, such issue to take the part its parent would take if living. Provided, however, and I do make this share chargeable with, and that there be deducted or paid therefrom, any and all liabilities or debts

that I or my executors may have or hold against or pay for the said Edward W. Bissell, but any such debt or deduction shall be without interest thereon to me."

*Article 7.* This article provides for the taking possession of the whole estate by the executors, with power to lease, sell, and convey the same, and pay the proceeds of such sales and leases to the devisees. "Except that the principal of that part of my estate which is given to my daughter Margaret A. Bissell and her children shall be set apart and put at interest, and such interest only shall be paid to her, and on her death said principal shall be paid to her children her surviving, and the issue of any deceased child; such issue to take only such part or share as its parent would take if living."

The doctrine that a deed absolute on its face may be shown to be a mortgage is old and well established. Vern. 183, 268, 394; Prec. Ch. 95; 4 Kent, Com. 141; *Bloodgood v. Zeily,* 2 Caines, Cas. 124; *Strong v. Stewart,* 4 Johns. Ch. 167; *Van Buren v. Olmstead,* 5 Paige, 9; 1 Washb. Real Prop. 126; *Jackson v. Green,* 4 Johns. 186; *Wadsworth v. Loranger,* Har. Ch. 113; *Swetland v. Swetland,* 3 Mich. 482; *Fuller v. Parrish,* Id. 214; *Emerson v. Atwater,* 7 Id. 22; *Hughes v. Edwards,* 9 Wheat. 489–495; *Barber v. Milner,* 43 Mich. 248; *Dow v. Chamberlin,* 5 McLean, 282; *Rogan v. Walker,* 1 Wis. 527; *Wilson v. Drumrite,* 21 Mo. 325; *Johnson v. Van Velsor,* 43 Mich. 208.

It will be noticed from an examination of the foregoing Michigan cases that the question has several times been before the Supreme Court of this State, and the conclusion reached must be regarded as settled law upon the subject.

There is less difficulty in ascertaining what the law is than in applying it to cases as they arise under it.

No question can be made but that, in cases when the character of the conveyance is not what was intended by the parties, and the error occurred by accident, mistake, or through such misconduct of the creditor as will amount to

a fraud, the doctrine contended for by counsel for complainants will apply, and parol testimony may be resorted to to show that a deed absolute upon its face was intended as a mortgage to prevent oppression of the debtor. This however, I think may be regarded as a species of fraud.

The deed, with the defeasance, constitutes the mortgage. Indeed, it was never necessary that both should be contained in the same instrument; and it is now, even under our recording laws, not necessary, to give the protection they afford to mortgagees. The agreement for the defeasance, whether written or unwritten, is no more than one of the conditions upon which the deed was given, and therefore constitutes a part of the consideration for the conveyance; and I have never been able to discover why it was not competent to show it by parol in any case, either at law or in equity, where it was competent to show the actual consideration for the conveyance.

It is true, where the deed does not contain the defeasance, the presumption arises that the conveyance is absolute; and in making proof that a defeasance was intended by the parties, and was, in fact, a part of the consideration upon which the conveyance was made, this presumption must be removed by testimony before the debtor can use the evidence showing his right to defeat the absolute character of the conveyance; and no more than this, I apprehend, is meant by the courts when they say clear, irrefragable, and most convincing proofs are required to show that a deed absolute upon its face was intended as a mortgage.

It comes finally to a question of what was the understanding and the intention of the parties at the time the instrument was made; and this, like any other fact, depends for its support upon what was said and done by the parties at the time, together with all the other circumstances bearing upon the question.

Positive evidence is not required to be made of the intention and agreement of the parties if it does not exist, but the proof must be made by the best testimony attainable, and if such testimony is not sufficient to satisfy the conscience of the court that the defeasance was made or intended to be made, or if the court, after canvassing the testimony carefully, has serious doubts as to what it does show upon the subject, the deed itself must control.

In this case the real question is one of fact,—was it the intention of the parties to the deed that Hugh Moffat should receive but a lien upon the property as security for the money then owing to him by Edward W. Bissell, or for liabilities to him? If such was the intention, the conveyance is a mortgage. If such was not the understanding, then the deed must stand, and its legal effect must be determined from what is therein contained.

In establishing the fact that the instrument was intended to operate as a mortgage, it is not necessary to show any particular time was agreed upon when the mortgage was to be paid. This will be implied. Neither was it necessary to show what interest was agreed upon between the parties. the mortgagor should pay. If the mortgage was due presently, the law will imply the agreement as to interest, and also fix the rate; and if the case shows a state of facts from which these things will be implied, the bill will be sufficient if it states such facts without averring the implications which arise therefrom.

Neither is a demand necessary before bringing suit to foreclose a mortgage, any more than in any other case.

It is true, a court of equity ought not to declare a deed a mortgage, and leave the terms of payment and rights of the parties under such mortgage unsettled, where a foreclosure is asked in the same suit. Such terms of the mortgage, and rights of the parties thereunder, may, how-

ever, as well be determined from the facts implied as from those proved by testimony.

In solving the question upon the facts, a few things are absolutely necessary to be found to exist before the deed can be construed a mortgage.

A debt owing to the mortgagee, or a liability incurred for the grantor, either pre-existing or created at the time the deed is made, is essential to give the deed the character of a mortgage.

The relation of debtor and creditor must appear; the existence of the debt is one of the tests. *McNamara v. Culver*, 22 Kan. 661, 668; 1 Jones, Mort. § 265; *Crane v. Buchanan*, 29 Ind. 570.

The amount of the debt, as well as its continuance, should also be made to appear, where a foreclosure is asked in the same suit wherein it is sought to establish the character of the instrument.

It is also of importance to know precisely when the character claimed for the instrument was fixed. In construing the deed to be a mortgage, its character as such must have existed from its very inception,—created at the time the conveyance was made. The character of the transaction is precisely what the intention of the parties at that time made it. It will therefore be discovered that the testimony of those who were present at the time the instrument was made, and especially of those who participated in the transaction, becomes most important.

In this case the conveyance is a full warranty deed. The consideration for which it purports to have been made was the sum of $65,000, and was made but eighteen months before Hugh Moffat died. The grantor was defendant Bissell, Moffat's son-in-law. He was in business, and in straitened circumstances. His father-in-law had indorsed his paper largely, and let him have money, until, at the time the deed was made, it amounted to about the sum of $30,000; and

there was on the property an incumbrance by way of mortgage to the amount of about $34,000. The immediate necessities of Mr. Bissell required at least $5,000 to enable him to escape immediate failure.

It was under such circumstances as these, and others quite as embarrassing, that the conveyance is shown to have been given by Bissell and his wife to his father-in-law.

On the same day Mr. Moffat let Mr. Bissell have $5,000 in cash, taking his note therefor, due one day after date, and which constitutes a part of the consideration for this deed. None of Mr. Bissell's paper, either held by Moffat, or indorsed by him, and which is claimed by defendants to have entered into the consideration of the deed, has been surrendered up to Bissell, nor has any demand been made for it, but, so far as the record shows, is still outstanding against him. He continued in the possession of the property deeded after the conveyance was made, renting portions of the same to others. The discrepancy between the actual value of the property and the amounts for which it was taken by Moffat was at least $15,000. These are all significant facts for complainants. It is true, explanatory testimony is given relating to some of them in the interest of the defendants, but the effect of the explanations is far from satisfactory to my mind.

If the property was sold for $65,000 to Moffat, as the defendants claim, Bissell's indebtedness to Moffat was paid in full, including all his liabilities upon indorsements, and there would still remain due to Bissell a balance from Moffat of about $5,000; and this is what defendants claim in their answer. It would seem hardly probable that Bissell should give his note to one who was so much his debtor, and especially after paying him $600 that he did not owe. This circumstance, appearing as it does in the record, cannot be overlooked.

Again, the will of Mr. Moffat was made about one year

after the deed in question was given. It provides for the deduction of Bissell's indebtedness to him from his wife's portion of the estate. This would seem to be inconsistent with the idea that Moffat supposed himself then indebted to Bissell.

There are but three persons who testify to the circumstances attending the execution and delivery of the deed. The complainant Eatherly is one of the three. He was Moffat's general agent at the time, had been his partner, and with him in some capacity since 1850, and is now one of the executors of his will.

The second is D. C. Holbrook, of Detroit. He had been and then was the attorney of Mr. Moffat. He is a gentleman well known, and learned and distinguished in his profession. Both of these witnesses are men of high standing, both for intelligence and integrity, and had the confidence of Mr. Moffat. Mr. Holbrook drafted the conveyance. Mr. Eatherly looked after the business as agent for Mr. Moffat, in which capacity he seems to have been trusted for many years, to an unlimited extent, and in most confidential matters, by Moffat, and had charge of all his business at the time the deed was made, and so continued to have until Mr. Moffat died; and his testimony shows that he was familiar with all the facts, and knew the reasons why the conveyance was made, and for what purpose the same was made. He testified that the deed was intended to secure the loan of money Mr. Moffat made to Mr. Bissell, and the former against his indorsements for Bissell, all of which he was obliged to pay.

Mr. Holbrook says that the conveyance was intended by both parties as a mortgage; that he drafted it with that understanding; and that he derived his information from Mr. Eatherly and from Mr. Bissell at the time he drafted the instrument.

Mr. Bissell is the third person who ought to know all

about the true character of the conveyance at the time it was made. He denies that it was intended as a mortgage, but that it was intended as a deed absolute, and to be in full satisfaction of his indebtedness to Moffat, and that the consideration also included the payment of the $34,000 mortgage; that the consideration was agreed upon between him and Moffat before the deed was made, and that, under the arrangement, $5,000 is still due him from the estate.

Mrs. Bissell was also sworn and examined in the case. Her testimony, so far as it went, tended to support that of her husband in regard to the character of the deed.

Several other witnesses were sworn as to what Mr. Bissell and Mr. Eatherly had said about the transaction and the character of the deed since it was made. While all this testimony has been carefully examined, it is not my purpose to give any of it in detail, and will only state that the effect it has produced upon my mind is strongly confirmatory of the evidence given by Mr. Eatherly and Mr. Holbrook, and leaves the true character of the deed, in my judgment, beyond any reasonable doubt.

So much of the testimony of Mr. Bissell and Mrs. Bissell as relates to facts equally within the knowledge of Mr. Moffat when living was not admissible testimony under our statute. Neither do I think the examination of the witnesses as to those facts warranted by anything which occurred upon the other side upon the examination. There can be no question but that Bissell is largely interested in the result of this suit, and that Mrs. Bissell is a necessary defendant, and that both are opposite parties. How. Stat. § 7545, and authorities under said paragraph.

The character of the transaction at the time the deed was made, as we have before said, must be allowed to settle the question. What Mr. Moffat said afterwards, if anything, of his intention to hold the property under the

deed, or any facts tending to show after-intention, were admissible testimony only so far as they tended to prove the original intention at the time the instrument was made. 1 Jones, Mort. §§ 263, 276; *Kearney v. Macomb,* 16 N. J. Eq. 189.

The possession claimed to be in Moffat by the defendants' counsel would not necessarily be inconsistent with the character of the conveyance as a mortgage. *Ferris v. Wilcox,* 51 Mich. 105; *Bennett v. Robinson,* 27 Id. 26; *Jeffery v. Hursh,* 42 Id. 563; *Wetherbee v. Green,* 22 Id. 311, 321.

I think, in a case of this kind, something more than a bare preponderance of proof should be required to change the character of the instrument expressed upon its face, and in the present case I think we have it. I am satisfied that, when the deed in this case was made, it was intended by the parties thereto that it should be a security for the money then owing from Mr. Bissell to Mr. Moffat, and against the latter's liability for the debts of the former, and that it should have the effect of a mortgage, and nothing more.

The decree should be reversed, and a new decree entered in accordance with the prayer of the bill, with costs.

CHAMPLIN, J., concurred.

CAMPBELL, C. J. (*dissenting*). The only question in this case is whether the absolute warranty deed from defendants to Hugh Moffat, which the bill in this case claims to have been a mortgage, was so in fact. I agree with the circuit court that it cannot be so treated.

It is true that, under previous decisions of this Court, an absolute deed can be shown to be defeasible by parol upon adequate proof. But this is one of the very few cases where an attempt has been made on behalf of the grantee to so declare it. This may be done probably on

either side, but it ought not to be done without entirely satisfactory proof. The rule is one of good sense, as well as of law, that solemn written documents should not be changed essentially by parol; and it is always dangerous to evade the statute of frauds, which was passed to avoid the very difficulties arising here, of conflicts in testimony, whether from misunderstanding or from any other cause.

It is certain that an instrument which is clear in terms, and operative for a definite purpose, cannot be corrected for mistake unless the mistake is mutual. It is also certain that such an instrument cannot be made operative for any purpose not shown on its face unless all the parties understood its purpose alike.

There is not a particle of testimony in the present case showing that Mr. Moffat, the grantee, expected or agreed to take a mortgage. It is not at all likely that this deed was made without some previous understanding with him. Bissell's testimony, if received, shows what that was. If struck out because excluded under the exception in the statute as to facts known to the deceased, it would be grossly inequitable to allow any presumption contrary to the written document against him. The paper, so far as Mr. Moffat is concerned, must be presumed to have been accepted by him as it was written, in the absence of any proof concerning his supposition to the contrary.

Mr. Holbrook's testimony as to his understanding amounts to very little beyond his own inferences when it is carefully scanned. The change in the consideration from $60,000 to $65,000, insisted on by Mr. Bissell and put in by Mr. Holbrook, is entirely senseless as applied to a mortgage for half the amount, and the absence of any discussion of amounts or terms of payment is a very remarkable omission, if all the parties supposed this deed was a mere security. It is not impossible, and I think not improbable, that Mr. Eatherly had it in his mind that he

could make Bissell assent to any use of the property he saw
fit to impose, and was more zealous for Mr. Moffat than Mr.
Moffat was himself. But I cannot but be impressed with
the appearance from the record that the idea of a mort-
gage was either an after-thought or an unexplained pur-
pose. Moffat and Eatherly are not claimed to have been
dishonest, and, in my opinion, their conduct is more reliable
than Mr. Eatherly's present impressions.

It is evident, and cannot fairly be doubted, that Mrs. Bis-
sell understood that the deed which she executed was ab-
solute, and that she has always insisted on it. I do not
think it competent, under any rule of law, to make the same
deed a mortgage as to one signer, and a deed absolute as to
the other. Her testimony is clear, and I believe it is true.
Either Mr. Bissell committed perjury, or he understood it in
the same way. His conduct was consistent with his
testimony on the subject.

Both Moffat and Eatherly dealt with this property in all
respects as if Mr. Moffat owned it. It was offered and ad-
vertised for sale as Moffat's. It is quite clear to my mind
that several creditors of Bissell, whose claims could easily
have been paid out of the rents and profits of the land before
any foreclosure could have been enforced, were induced by
Eatherly, when they had a right to know the facts and en-
force their claims, to believe that Bissell had no further
rights there. I think it far more likely that Moffat and
Eatherly acted honestly than dishonestly; and their conduct
would have been dishonest if this deed was not regarded as
absolute.

In my opinion, the testimony predominates against the
mortgage theory. If it were more nearly balanced, or even
if the testimony as admitted should appear, as I think it
does not, to favor that theory, it would be dangerous to act
on it, when Moffat is not living to testify, and the defendants

are claimed to be incompetent to speak when he is silent. His conduct speaks, as far as it goes, in their favor.

I think the decree should be affirmed.

MORSE, J., concurred.