JACOB SELIGMAN ET AL. v. THE ESTATE OF EGBERT TEN EYCK.

[See 49 Mich. 104; 53 Id. 285; 60 Id. 267.]

*Evidence—Trial—Bill of sale—Security.*

1. It is always competent to show that any evidence in a cause is given for the first time, when there have been previous trials, or to explain why it is so given, and the reason it was not produced before.

2. It does not require the same amount and strictness of proof to declare a mere bill of sale a chattel mortgage or security as it does to determine a deed to be a mortgage.

3. An instruction to the jury that it is competent to show that a bill of sale, although conveying an absolute title on its face, may have been given by way of security, and that it is competent to show this by *parol* testimony, is sufficient in the absence of a request for the further instruction that the burden of proof is on the party making such claim to overcome the contrary presumption arising from the face of the paper.

4. This case has been four times determined by a jury of the vicinage in favor of the plaintiffs, and should not be again reversed

unless substantial error has been committed, resulting in a miscarriage of justice.

5. In all cases where by reason of the death of a party a case must be disposed of upon the testimony of disinterested parties and circumstances, courts should not be too strict in the admission of testimony. Any and all circumstances that have a bearing, however slight, upon the questions at issue, should be permitted to go to the jury for their consideration in arriving at the truth of the disputed matters before them.

Error to Saginaw. (Gage, J.) Argued February 14, 1889. Decided April 19, 1889.

Plaintiffs appeal from rejection of claim in probate court. Judgment of circuit court, in favor of claimants, affirmed. The facts are stated in the opinion.

*Wheeler & McKnight (Benton Hanchett,* of counsel), for appellant.

*W. S. Tennant (Wisner & Draper,* of counsel), for plaintiffs.

[The points of counsel are stated in the opinion, and their briefs are mainly confined to a discussion of the testimony.—REPORTER.]

MORSE, J. This is the fourth time this case has been in this Court, and each time it has reached us upon the verdict of a jury in favor of the plaintiffs. It will be found reported as follows: 49 Mich. 104 (13 N. W. Rep. 377); 53 Id. 285 (18 N. W. Rep. 818); and 60 Id. 267 (27 N. W. Rep. 514). It will not be necessary to state the facts at issue, except in so far as they bear upon the assignment of errors discussed.

As the case now appears before us, the plaintiffs show the delivery of 2,147,130 feet of logs under the contract between their assignor, J. P. Kroll, and the firm of C. & E. Ten Eyck. The defense make no proof of payment,

and defend under two claims, each one in the nature of an offset:

1. That by a written contract between Kroll and C. & E. Ten Eyck he sold to that firm a one-half interest in a certain lot of standing pine and logs then cut upon the same lands from which the logs delivered by Kroll under the contract sued upon were obtained; that C. &. E. Ten Eyck paid Kroll $1,500 in full for the timber and logs sold to them, as above stated; that Kroll cut this timber, and sold and delivered all the logs, one-half of which were the Ten Eyck's, and received the money; and upon a settlement between the parties a large profit was made, one-half of which belonged to C. & E. Ten Eyck, and· this must be an offset against anything found to be. due Kroll for the logs sued for by plaintiffs.

2. That in February, 1878, Kroll sold to C. & E. Ten Eyck a lot of J P K logs, which Kroll afterwards sold to one Gould, and received therefor $4,034.12; that this money belonged to Ten Eyck, and must be set off against the plaintiffs' claim.

The contract under which the first claim of set-off is made is called in the record the undated contract, and was found among Ten Eyck's papers after his death. Upon the trial the plaintiffs admitted a credit upon the contract under which Kroll delivered the logs, reducing their claim to $3,815.27. This contract was dated November 23, 1878, nine months later than the contract for the sale of the J P K logs, under the second claim of the defense.

The plaintiffs contended on the trial that the contract for the sale of the J P K logs, although conveying an absolute title on its face, was in fact given as a security, and not intended as an absolute transfer of title. The court instructed the jury that, if they found it was given as a security, they might eliminate it entirely from the case. It is apparent that the jury so treated it. But he also charged them that if they found it to be an absolute sale of the logs, and Kroll sold them to Gould (of which

sale there was no dispute), and received pay for them, it would wipe out plaintiffs' claim. This matter, therefore, went squarely to the jury.

The plaintiffs claimed that the undated contract was never delivered, and was inoperative, and offered testimony to support this claim. The court instructed the jury that under the circumstances the presumption would be that the contract was properly executed and delivered, and of force and effect between the parties; that it was a paper which by its terms did not require anything to be done by Ten Eyck; that it did not require that it should be signed by Ten Eyck, or that any action should be taken on his part in regard to it; that it was not necessary that the defense should prove any consideration in order to make it a valid paper; that the burden of showing that it was not delivered and was inoperative was upon the plaintiffs, who must by testimony overcome the natural presumption arising from its being found after Ten Eyck's death among his papers. The jury evidently found that it was not delivered for the purposes mentioned in it, and that it was inoperative and of no effect, and we cannot say they were not justified in so finding.

Testimony was given by Mr. Tennant, one of the counsel for the plaintiffs, that the first claim of set-off made by the defense under the contract or bill of sale of the J P K logs was on the third trial of the case,—the one next preceding the trial now here for review. This was offered and received in explanation of the testimony of Mr. Cogswell in reference to said bill of sale, which was offered by the plaintiffs for the first time on the last trial of the case, and to show that up to the next to the last trial there had been no necessity of calling on Mr. Cogswell, or any other person, to testify upon the subject, as the bill of sale had never before that time been

relied or rested upon as a defense to plaintiffs' claim, and that upon the trial before, when it was first presented, the plaintiffs were taken by surprise, and then unable to meet it. This evidence was proper. It is always competent to show that any evidence in a cause is given for the first time, when there have been previous trials, or to explain why it is so given, and the reason it was not produced before.

It is claimed, further, that the evidence of Cogswell of a parol conversation between himself and Ten Eyck should not have been received at all, without the direct caution of the court to the jury as to the manner in which it was to be considered, and the weight to be given to it as against the terms of a written instrument; and that the court also erred in not sufficiently warning the jury that the terms, tenor, and effect of this bill of sale could not be altered or changed by parol proof, unless the oral testimony was such as to make a clear and conclusive case that the instrument was given as a security, and not, as it purported to be, as an absolute conveyance of the logs,—"a case which, by the force of the evidence, commands unhesitating consent." A large number of authorities are cited to support this assignment of error, and to maintain the proposition that the proof to convert a deed absolute on its face into a mere security or mortgage must be clear, convincing, and unequivocal; citing, among other cases, that of *McMillan v. Bissell*, in this Court, and reported in 63 Mich. 66 (29 N. W. Rep. 737).[1] But it must be remembered that a mere bill of sale, as this was, not under seal, is not governed by the rules applicable to such solemn instru-

[1] Counsel also cited *Tilden v. Streeter*, 45 Mich. 540; *Johnson v. Van Velsor*, 43 Id. 217; *Case v. Peters*, 20 Id. 303; *Coyle v. Davis*, 116 U. S. 112; *Cadman v. Peter*, 118 Id. 80; *Howland v. Blake*, 97 Id. 626; *Sloan v. Becker*, 26 N. W. Rep. 730.

ments as deeds under seal.   It does not require by any
means the same amount and strictness of proof to declare
a mere bill of sale a chattel mortgage or security as it
does to determine a deed to be a mortgage.

"A  simple  bill  of  sale  does  not  embody  the  prelimi-
naries nor the essential terms of a contract in such a way
as  to  exclude  parol  evidence."    *Picard  v.  McCormick,*
11  Mich.  68.    See,  also,  *Rowe  v.  Wright,*  12  Id.  289;
*Trevidick  v.  Mumford,*  31  Id.  467;  *Sirrine  v.  Briggs,*  Id.
443.

The court instructed the jury that it was competent to
show that an instrument of this character, although con-
veying an absolute title on its face, may have been given
by way of security, and that it was competent to show
this by parol testimony.  ·  We do not think it was neces-
sary to go further, inasmuch as the defendants' counsel
on the trial did not ask any further instruction in this
regard.   It is now contended that the court should have
at least told the jury that the burden of proof was on
the plaintiffs to introduce sufficient evidence to overcome
the presumption that the instrument was what it pur-
ported to be,—an absolute sale.   Although nothing was
said about the burden of proof, and no request asked in
this respect, I think the court clearly enough gave the
jury to understand that the presumption was with the
paper as it read, and that they must be satisfied that it
was given as security, and not as an absolute sale, before
they could eliminate it from the case.   The theory of the
defense was that the paper could not be shown by parol
proof to be a security, and the theory of the plaintiffs
was that they had a right to show by oral evidence that
it was not an absolute sale.   The court submitted it on
the theory of plaintiffs, and I do not think the jury were
misled by the charge.

The defendants presented 16 requests to charge. The record shows that the circuit judge—

"Did not read said requests to the jury, but assented thereto, except as stated above to the ninth and tenth requests, by a memorandum 'Yes,' on the margin, and intended to embody them in his charge, and counsel for defendants made no request that the court should read the requests of the defendants marked 'Yes' on the margin thereof."

At the close of the charge Mr. Wheeler, one of the counsel for the defendants, said:

"I ask your honor to charge a little more fully, as I have requested in my requests, as to what Ten Eyck was to do under the undated contract, as charged by the Supreme Court.

"The Court: I have charged that the contract was drawn in such a way, and was of such a nature, that he was not required to do anything except to take the profits. That is about as plain as I can make it."

Mr. Wheeler took no exception to this remark of the court, nor did he manifest in any way that he was not satisfied with the reply. It is claimed by counsel for plaintiffs that the court not only intended to give these requests marked "Yes" upon the margin, but that he substantially did so, and almost in their exact language. But the counsel for the defense insists that he did not give them in the language requested, and that they were entitled to them as presented. This fault is found with the charge of the court in relation more especially to the undated contract. We have carefully compared these requests with the charge of the court and find them to have been substantially given by the court, except the thirteenth. The first and second and fourteenth related to the contract or bill of sale of February 23, 1878, and were given with the modification that they did not apply if the jury found it to be a security, and not an absolute transfer. This was correct, as heretofore shown, as it

was open to the plaintiffs to show that the bill of sale was only a security. The third, fourth, fifth, six, seventh, eighth, fifteenth, and sixteenth were given in almost the identical language of the requests,—so nearly word for word that the most captious critic ought not to complain that they were not read as written. The eleventh and twelfth were given in substance. The thirteenth was not given, nor do I think the defense was entitled to it. It is not contended in the defendant's brief or argument that it was error not to give it.

The ninth request, refused by the court, was as follows:

"The statements made in Kroll's affidavit are evidence against the plaintiffs, on the subject of the logs having been paid for in full, and there is no evidence in the case that, in giving Mr. Wheeler the statements upon which the affidavit and answer of Kroll were drawn, Kroll made any other or different statements than what appear in the affidavit and answer, and the jury are not authorized to find that any other or different statements were made."

The court instructed the jury in this regard as follows:

"There is another item of proof in this case here for your consideration. It appears that one Mr. Gould filed a bill in chancery here, and Mr. Kroll was a defendant in that case, with other parties, and that in that bill a controversy arose with regard to a part of the TEN logs,— 530,000, or thereabouts, of those logs,—and they have offered in evidence an affidavit made by Mr. Kroll for the purpose of procuring the dissolution of an injunction in that case; also the answer of Mr. Kroll filed in that case. The claim that they make is that the affidavit and the answer state that the TEN logs had been fully paid for. The subject-matter of that suit was 530,000 feet of the TEN logs,—a part only of those that had been marked with that mark. The claim they make is that, if the affidavit and answer are true, the entire lot might be considered by the jury as paid for. Now, this affidavit

and answer are submitted to the jury as evidence against the claimants here on the subject of whether the entire lot of logs had been paid for or not. The response that is made to it by the claimants is this: That a large amount had been paid on these logs, and that a party could very properly—that is the claim they make—sign this affidavit, and swear to it; also the answer,—claiming that 530,000 had been paid for. Now, I leave that for the jury to determine, what the fact is in that matter. I simply present before you the respective claims that are made. There is no evidence in this case that shows precisely what Mr. Kroll said to Mr. Wheeler, his counsel in that case, with regard to what should be stated in the answer or in the affidavit. But I charge you that you have no right to infer that anything else was said to him than what appears in the affidavit and the answer."

This instruction is complained of as being misleading, and not in accordance with the facts, while it is stated in the record by the circuit judge that he claims to have thereby given, in substance, the request of the defense, although he marked it as "Refused." The answer and affidavit made by Kroll in the suit of Gould against him manifestly referred to only 533,330 feet of logs marked TEN; and the statement of Kroll in said answer and affidavit that all the TEN logs had been paid for was as open to the construction of the plaintiffs, that he was speaking only of the logs involved in the Gould suit, as it was to the construction of the defense, that he meant that all the TEN logs cut by him had been paid for in full by Ten Eyck. The charge of the court was certainly as favorable to the defense as they were entitled to have it, if not more so. The jury were permitted to infer, if they desired, that Kroll, by this answer and affidavit, admitted and stated that all the logs cut and delivered to Ten Eyck under the contract had been paid for in full. It seems to me that the most natural presumption would be that Kroll, in this answer and affidavit, was confining his statements to the

logs in controversy in that suit,—the 533,330 feet,—and was not speaking of all the logs marked TEN, both in and outside of the controversy between himself and Gould.

The tenth request was as follows:

"The lack of evidence as to Ten Eyck's doing anything, and even proof that he did nothing, under the undated contract, cannot be considered by the jury."

This the circuit judge marked "Refused," and did not give to the jury. We do not think that the court erred in not giving this request. The circuit judge, as heretofore shown, distinctly stated to the jury that this contract by its terms did not require anything to be done by Ten Eyck, that it should be signed by him, or that any action should be taken on his part in regard to it, and that it was not necessary to show any consideration for it. Ten Eyck was dead, and Kroll, therefore, precluded from testifying in relation to this undated contract. The two persons who, above all others, would know whether this contract was delivered or not, are necessarily out of the case, as far as their testimony is concerned. The truth must be determined by circumstances, and the evidence of third persons. I think the jury had the right to consider all the circumstances in the case, and that so much of the tenth request as sought to take from the jury the fact that there was proof tending to show that Ten Eyck did nothing under this undated contract was properly refused by the court. It was not necessary that Ten Eyck should do anything under this contract, and this the court instructed them, yet he might by various acts and words have recognized it as being in force and effective. Proof tending to show that he did nothing of this kind, coupled with the evidence of Bartow and the letters of Ten Eyck to Lockwood (see 60 Mich. 275, 276), was certainly competent to be considered by the jury in

determining wheth.er this contract was a living effective instrument, or an unused, as it was an undated, paper.

This case has been four times determined by a jury of the vicinage in favor of the plaintiffs. It should not be again reversed, unless substantial error has been committed, so that we are satisfied that by such error there has been a miscarriage of justice. It must be remembered that the fact of Ten Eyck's death also shuts out the testimony of Kroll, and that, therefore, the case must be disposed of upon the testimony of disinterested parties and circumstances. As disinterested parties must necessarily have less knowledge of the facts than the principal actors, of the matters in issue here, we are left, as the jury were, to find the truth from many facts, some of them of little importance standing alone. But the jury had the right to use these circumstances for what they were worth, and, in all cases like the present, courts should not be too strict in the admission of testimony. Any and all circumstances that have a bearing, however slight, upon the questions at issue, should be permitted to go to the jury for their consideration in arriving at the truth of the disputed matters before them. A careful examination of the record discloses no error of importance on the trial, and I am not disposed from such examination to find that the jury were misled or prejudiced in reaching their verdict. There was evidence in the case which, if believed by them, justified their conclusion. We cannot say, without sight or hearing of the witnesses, that the jury ought not to have given credence to their testimony. In 60 Mich. 275, as the record there appeared, we thought, and so intimated, that the claim of the plaintiffs was not sustained by the proofs on either branch of the alleged set-off; but the testimony of Cogswell in relation to his talk with Ten Eyck in reference to the bill of sale of the J P K logs,

if true, disposes of that instrument as a defense to plaintiffs' claim; and the testimony of Bartow, as given on the last trial, and the Lockwood letters, with other circumstances, convince me that the "undated" contract was also an "unused" paper, and never had any legal effect.

The judgment is therefore affirmed, with costs of both courts.

SHERWOOD, C. J., CHAMPLIN and LONG, JJ., concurred with MORSE, J.

CAMPBELL, J. I concur in the result.