## FROLICH *v.* AIKMAN.

1. MORTGAGES—DEED AS MORTGAGE—EVIDENCE.

In equity proceedings, to have a deed, absolute upon its face, declared to have been intended as a mortgage, clear, irrefragable, and most convincing proofs are required.[1]

2. SAME—BURDEN OF PROOF—CONTRACT.

In such proceeding, in the absence of fraud or overreaching,

---

[1] Parol evidence that a written instrument which on its face imports a complete transfer of a legal or equitable estate or interest in property was intended to operate as a mortgage or pledge is taken up in note in L. R. A. 1916B, 18.

the burden rests upon the plaintiff to show that at the time the instrument was executed there was a contract by which he was to repay the consideration, and that thereupon his vendee should reconvey the property to him.

3. SAME—MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED—RELAXING RULE.

Where, after plaintiff had been granted a change of venue, he permitted the cause to slumber for nearly five years, and in the meantime the grantee died, and plaintiff is thus prevented by the statute from testifying to the facts surrounding the transaction, there is no showing entitling him to a relaxation of the rule requiring clear, irrefragable, and convincing proofs of his claim.

4. SAME—FRAUDULENT CONVEYANCES—EQUITY.

Where plaintiff conveyed property for the purpose of enabling him to effect a fraudulent and collusive settlement with his creditors, he is in no position to seek the aid of a court of equity to have said conveyance, absolute on its face, declared to be a mortgage.

BIRD and PERSON, JJ., dissenting.

Appeal from Wayne; Tucker, J., presiding. Submitted January 6, 1916. (Docket No. 31.) Decided March 29, 1917. Rehearing denied September 28, 1917.

Bill by Edward Frolich against William Aikman, Jr., to have a deed declared a mortgage, for an accounting and other relief. Upon the death of said defendant the cause was revived against Henry I. Armstrong and Aikman Armstrong, executors and trustees under the will of said deceased. From a decree for complainant, defendants appeal. Reversed.

*Lucking, Helfman, Lucking & Hanlon (B. F. Erskine, of counsel), for complainant.*

*Robert F. Eldredge (Angell, Bodman & Turner, of counsel), for defendants.*

BIRD, J. (*dissenting*). A study of the record in this controversy has convinced me that the findings and

conclusions of the chancellor therein should be made the final ones. He disposed of the case as follows:

"In this cause the bill is filed for an accounting and for" the construction of a deed dated July 5, 1905, which complainant claims was given merely as security for a loan, and should therefore be construed to be a mortgage. The case was commenced in Wayne county, by bill filed November 8, 1906, and was removed to the Macomb circuit on December 10, 1906, where the suit has since been pending. The defendant, William Aikman, has since died. and the action revived against his executors.

"The parties had been intimate friends for years. Complainant was in the paint and glass business, and the defendant was an attorney practicing in the city of Detroit, but they seem to have had many tastes in common. Quite a large amount of real estate was at one time owned by both parties as tenants in common. This real estate was sold in parcels from time to time. The expenses incident to the business were shared between them, and whatever profits were made were divided. I find that on July 5, 1905, and for some time prior thereto, a partnership in this real estate had existed between the parties. On that date (July 5, 1905) a quitclaim deed was executed by Frolich to Aikman covering all that then remained of their holdings. The consideration recited in the deed was $2,-500, and that amount was paid by the defendant to complainant in cash.

"It was the claim of the complainant at the time the bill in the case was filed, November 8, 1906, that this deed of July 5, 1905, was never intended to convey the title of complainant to the property therein described absolutely, but that the complainant only intended the same as security for the repayment by him to the defendant of the $2,500 received by him, which amount was merely a loan, and was never intended to be consideration in full for the transfer of the property. It was the claim of the defendant that the $2,500 was never a loan, but was paid by him to complainant in full settlement for the property transferred by the deed. This is the main question to be determined in the case. There is nothing to show upon the face of the papers that this deed was intended as a

mortgage, but under the circumstances of the case I think it should be so construed if there were serious doubts as to its character.

"The parties were intimate friends. Their various responsibilities as to this property were not closed up at the time the deed was executed. Frolich was in financial straits and in great need of money. He had paid some bills relating to the property, and had received a large amount of money from sales of real estate which had not been accounted for between parties. Some bills pertaining to the property were paid by Frolich after the execution of the deed, though none of large amount. They indicated, however, that he considered he still had some interest in it. The two had borrowed money before July, 1905, and given quitclaim deeds to secure payment of the loans, and that is not an unusual method of giving security. The final test to be applied is the amount of the consideration paid by Aikman. If I could satisfy myself that on July 5, 1905, the sum of $2,500 was a fair consideration for the property sought to be conveyed by the deed, I would be inclined to hold the paper of July 5, 1905, to have been an absolute conveyance of complainant's title.

"Several witnesses were sworn as to what the values were in 1905 of the houses and lots conveyed by the deed, * * * and I think one of the executors gave testimony as to value. I have gone over all this testimony, and I am satisfied that, taking the most conservative estimates made, the property interests conveyed by the deed of July 5, 1905, was at that time worth upwards of $5,000, or more than double the consideration actually paid. Some 43 lots, as I recall it, remained after the execution of the deed of July 5, 1905, and, aside from the value of any houses, these lots were worth upwards of $10,000. Of this 43 lots some 30 still remain on hand.

"Under these circumstances it would be only fair to hold the conveyance to have been a mortgage.

"As to the accounting between the parties, the bill will be treated as amended so as to cover an accounting of the entire partnership matters.

"A decree will be rendered in accordance with these findings holding the deed of July 5, 1905, to have been a mortgage and providing for an accounting before

a referee of all matters included in the partnership as to the lands in question."

The testimony referred to by the chancellor showing that Frolich paid bills in connection with the property after the quitclaim deed of July 5th was given has had much force in convincing me that Frolich did not understand that the conveyance was an absolute sale. The record shows that as late as June, 1906, Frolich paid some taxes on the property conveyed, and prior to that date he paid bills for plumbing, wall paper, lumber, water taxes, and fire insurance in connection with the partnership property, amounting in all to $235. These payments appear on the books as having been made in the due course of business, the same as those made before the quitclaim deed was given. The instances are indeed so rare where one pays an obligation which another is in duty bound to pay that I hesitate to believe that Frolich paid these particular bills except upon the belief that he was still a partner in the copartnership property.

The decree of the trial court should be affirmed, with costs to complainant.

PERSON, J., concurred with BIRD, J.

BROOKE, J. I am unable to agree with the conclusions reached by my Brother BIRD in this cause. This court at a very early day laid down certain principles which should govern it when called upon to determine that a deed absolute on its face is in fact a mortgage. In *Hunter* v. *Hopkins*, 12 Mich. 227, it is said that:

"The preponderance of evidence should be clear, and the evidence should be so convincing as to leave no reasonable doubt upon the mind."

In *Case* v. *Peters*, 20 Mich. 298, the court used the following language:

"It would  *  *  *  be exceedingly dangerous, and tend to weaken confidence in titles generally, if the

effect of deeds of conveyance * * * could be thus changed by a verbal agreement, except in very clear cases, where the contract is proved to the entire satisfaction of the court. It should never be done upon a slight preponderance of evidence. The court should be satisfied beyond a reasonable doubt."

In *Tilden* v. *Streeter*, 45 Mich. 533 (8 N. W. 502), we find the following:

"The party thus seeking to modify the operation of the instrument and prove himself entitled against the terms of his own deed to an equity of redemption is not only bound to make out the transaction was in truth and justice nothing more than the giving of security, but is required to do so by a force of evidence sufficient to command the unhesitating assent of every reasonable mind. Unless the testimony, says the Supreme Court of the United States, is entirely plain and convincing beyond reasonable controversy, the writing will be held to express correctly the intention of the parties."

In *McMillan* v. *Bissell*, 63 Mich. 66 (29 N. W. 737), it is said:

"Clear, irrefragable, and most convincing proofs are required to show that a deed absolute upon its face was intended as a mortgage. * * * A debt owing to the mortgagee * * * is essential to give the deed the character of a mortgage. The relation of debtor and creditor must appear."

An examination of cases in this court where relief has been granted and deeds absolute upon their face have been held to operate as mortgages only will show that generally the instrument under consideration was the result of fraud, overreaching, or oppression. No hint of the existence of either element can be gleaned from this record. Both parties were men of mature years, and both were men of extended and unusual business experience.

In a case of this kind the burden rests upon the plaintiff to show primarily that at the time the instru-

ment was executed there was a contract between himself and the grantee in his deed, by the terms of which he agreed to repay to his vendee the consideration advanced, and that thereupon his vendee should reconvey the property to him. An examination of this record discloses that there is an entire absence of evidence to the effect that Frolich, the plaintiff, ever agreed to return the $2,500 paid to him by Aikman as consideration for his deed. It may be said that this situation arises by reason of the fact that at the time of the hearing in the court below the defendant, Aikman, was dead, and the plaintiff therefore was prevented from testifying to the facts surrounding the transaction. This is true, and because it is true we are led to a consideration of the peculiar course this litigation has taken. The bill was filed November 8, 1906. An answer categorically denying the material allegations of the bill was filed November 16, 1906. A motion for a change of venue was made on December 6, 1906. This motion was supported by an affidavit of the plaintiff to the effect:

"That the opposite party, William Aikman, Jr., has an undue influence over the citizens of said Wayne county, and that an odium attaches to this complainant and applicant and to his cause of action on account of local prejudice."

Under the statute in force at that time the order was made as a matter of course, and the cause was transferred to Macomb county. There it was permitted by plaintiff to slumber from December 10, 1906, to July 7, 1913, a period of about 6½ years. In the meantime, and on January 28, 1911, the defendant had died. Under the circumstances, therefore, the rule which requires the plaintiff to make "clear, irrefragable, and convincing proofs" of his claim should not be relaxed, but plaintiff should be held to comply with it most strictly. So far from offering testimony to the effect that at the time of the giving of the deed

the plaintiff had borrowed the money from defendant and had agreed to repay the same, we find that on August 26, 1905, less than two months after the execution of the deed in question, in his bankruptcy proceeding, the plaintiff filed a "true and correct list of all his creditors." This was prepared by his bookkeeper, Mr. Crawford, was verified by his own affidavit, and defendant's name does not appear on that list as one of his creditors. If the plaintiff's claim in the case at bar is true, it is inconceivable that within so short a time after the transaction he could have forgotten the significant fact that he was the true owner of the undivided one-half of the real estate which had been conveyed by the deed, and that he owed by way of a mortgage thereon the sum of $2,500 to the defendant.

Plaintiff's mother, Mrs. Frolich, gave testimony tending to show that the entire transaction was entered upon between her son, the plaintiff, and the defendant for the purpose of enabling the plaintiff to effect a fraudulent and collusive settlement with his creditors in the bankruptcy proceeding. If this testimony is entitled to the slightest credence, the plaintiff, having fraudulently placed his property out of his hands, is in no position to seek the aid of a court of equity. *Gage* v. *Gage,* 36 Mich. 229; *Nickodemus* v. *Nickodemus,* 45 Mich. 385 (8 N. W. 86) ; *Patnode* v. *Darveau,* 112 Mich. 127 (70 N. W. 439, 71 N. W. 1095).

The learned circuit judge in his opinion said:

"If I could satisfy myself that on July 5, 1905, the sum of $2,500 was a fair consideration for the property sought to be conveyed by the deed, I would be inclined to hold the paper to have been an absolute conveyance."

Answering this position taken by the learned circuit judge, I desire to state at the outset that there is no proof in the record that the $2,500 check (Exhibit 8),

paid by the defendant to the plaintiff at the time the deed was executed was the only consideration paid. The deed itself recites a consideration of $1 "and other, good and valuable considerations," and the record shows that several transactions relating to the joint property of the parties had taken place a very short time before the deed in question was made, and that the consideration arising out of the sales of the joint property had gone to the plaintiff. Neither is it very clear upon this record, even supposing $2,500 to have been the sole consideration paid for plaintiff's one-half interest in the property conveyed, that such consideration was grossly inadequate. Making the proper deductions for mortgages on the property conveyed, the total value of the equity of redemption according to plaintiff's witness Tait was $6,143. Witnesses on behalf of the defendant placed the value of the property conveyed at a much lower figure, but, assuming Tait's value to have been correct, the plaintiff's interest would have amounted to but little more than $3,000, and the discrepancy between that sum and the amount received by him is too small to call for the intervention of a court of equity to relieve him from the results of the transaction upon the ground that it is grossly inequitable. My Brother BIRD places some stress upon the alleged fact that plaintiff made certain payments on account of the property conveyed after the date of the deed. This claim on behalf of the plaintiff is based upon the testimony of his bookkeeper, Crawford. Crawford was the bookkeeper of the Frolich Glass Company, owned by the plaintiff, and his testimony with reference to the items in question is confused, uncertain, and to my mind without conviction, but assuming these small payments were in fact made by plaintiff on account of the property lately owned jointly by himself and defendant, and then owned solely by defendant, the fact loses significance when it is re-

194—Mich.—37.

membered that defendant was never advised that plaintiff was making such payments. Under these circumstances the book entries showing the transactions (even if clear and unambiguous) would become mere self-serving statements and entitled to no weight.

I am clearly of opinion, after a careful review of the record, that the decree of the circuit court should be reversed, and plaintiff's bill dismissed, with costs of both courts.

STONE, OSTRANDER, MOORE, and STEERE, JJ., concurred with BROOKE, J.   KUHN, C. J., did not sit.