I. Will C. Holman, Appellee, v. Mason City Auto Company et al., Appellants.

MORTGAGES: Nature and Requisites—Absolute Deed—Evidence.
1   The same degree of evidence is required, whether it is the grantor or the grantee that asks that an absolute deed be declared a mortgage.

EVIDENCE: Presumptions—Retention of Uncanceled Notes. Principle recognized and applied that, where the grantee retains in his possession, without cancellation, the written evidence of a debt given by the grantor, a strong presumption is raised that a conveyance given did not extinguish the debt, and that a mortgage was intended.

MORTGAGES: Absolute Deed—Evidence—Value of Property Greater than Debt. Where property conveyed by deed is worth a great deal more than a debt which it is claimed to have satisfied, it furnishes strong evidence that a mortgage, rather than a deed, was intended.

MORTGAGES: Nature and Requisites—Absolute Deed—Insufficiency of Evidence. Evidence reviewed, and held not to support finding that an absolute deed was not intended as a mortgage.

*Appeal from Cerro Gordo District Court.*—M. F. Edwards, Judge.

March 11, 1919.

Rehearing Denied July 2, 1919.

THE appellee purchased an automobile of the appellants. He gave his notes for the purchase price. A contract was signed, which gave a lien on the automobile for the purchase price. Later, he executed a deed to the appellants. He replevined the notes. He bases that action on the claim that the deed was absolute, and canceled the notes; that the transaction as a whole was not a taking of security, but created a mere privilege on his part to rebuy lands that he had absolutely sold to appellants. The trial court sustained his claims. He is allowed to retain the notes, and it was ordered that they be canceled; and, in effect, it was held that, notwithstanding an offer by appellants to relinquish the property described in the deed, the title to said property was in the appellants. They appeal. —*Reversed.*

*D. W. Telford* and *F. A. Ontjes,* for appellants.

*Fitzpatrick & Farmer,* for appellee.

SALINGER, J.—I. Appellee contends that permitting the *grantee* to ask that the deed shall be treated as a mortgage is not within the rationale of the rule under which the English Courts of Chancery permitted oral

1. MORTGAGES: nature and requisites: absolute deed: evidence.

testimony to show that an absolute deed was a mortgage. It may be assumed that this rule was framed to relieve the debtor from the overhard grasp of the creditor. See *Mintz v. Soule,* L. R. A. 1916B, 15, at page 66; and it is said in *Hinkley v. Wheelright,* 29 Md. 341, that the grantee "has no right to complain of a difficulty growing out of his own wrongful act in making the form of the transaction different from the reality." And appellee argues that, if the grantee be permitted to invoke the rule, it would, in effect, make the court, in a considerable degree, the guardian of adults, as well as infants. But that, of course, is an objection that can as well be made against permitting the *grantor* to show that a deed is a mortgage. Where this is

permitted for either grantor or grantee, the courts, in a sense, relieve one party or the other from the writing as it has been framed. In the last analysis, however, the appellee claims no more than that, where the *grantee* seeks to have the deed treated as a mortgage, the testimony in support of such claim must be even more clear, convincing, and satisfactory than when the grantor seeks to do this. And it seems now to be settled that the same evidence is required, whether it is the grantor or the grantee that takes this position and asks this relief. 27 Cyc. 1032; *Bryant & McPhail v. Cowart,* 21 Ala. 92; *Kellogg v. Northrup,* 115 Mich. 327 (73 N. W. 230); *McMillan v. Bissell,* 63 Mich. 66 (29 N. W. 737); *Starks v. Redfield,* 52 Wis. 349 (9 N. W. 168, 169).

II. So we have to consider whether appellants have shown, by a clear preponderance, that the transaction as a whole was the taking of security, merely.

When the negotiations for making the deed were had, the appellee acted through his mother. Neither at the time when the deed was delivered, nor any other time did she request that the notes or the contract be delivered over. The notes have never been marked canceled. After the deed was given, the appellants continued to carry the notes on their books as a liability due from plaintiff, and treated them as such. They remained with appellants, without objection, until they were taken by the writ of replevin. No receipt acknowledging that the indebtedness had been paid was ever asked or given. Appellee counters with a claim that, when the deed was made, his mother did not know that any notes existed. The difficulty is that, while the mother does testify repeatedly that she did not ask for the notes because she did not know they existed, it appears conclusively that she did know. The negotiations were had while the plaintiff was in a hospital.

2. EVIDENCE: presumptions: retention of uncanceled notes.

Plaintiff himself testifies that, before being operated on in the hospital, he had a talk with his mother with reference to her "taking care of the notes held by the Mason City Auto Company;" that his mother told him about the matter the day before his operation, and thereupon he consented to convey in payment of his debt; that he told her he thought it was very imperative to do something "to take care of them before he was operated upon, and that I thought they ought to be paid, as we didn't know how the operation would come out." It is not the function of this opinion to set out all the testimony on this or any other point. It must suffice to say that, while ignorance of the existence of the notes would make a good explanation for the mother, the evidence shows overwhelmingly that there was no such ignorance. Therefore, the attempted explanation is, in itself, additional evidence against the appellee, because no one is helped by defending with an untruth. Again, if it be assumed the mother did not know of the existence of the notes, there is no claim she did not know that the contract of purchase existed. It, too, was an obligation to pay for the automobile, and no surrender or cancellation of the contract was requested. And, surely, plaintiff himself knew, when he signed the deed, that he had given the notes, and there is no explanation why, after he left the hospital, he failed to demand cancellation and surrender of what he had signed. The fact that the grantee retains in his possession, without cancellation, the written evidence of a debt, raises a strong presumption that a conveyance given did not extinguish the debt, and that a mortgage was intended. 27 Cyc. 1011; *Ennor v. Thompson,* 46 Ill. 214; *Wright v. Mahaffey,* 76 Iowa 96; *McMillan v. Bissell,* 63 Mich. 66 (29 N. W. 737). And, as said, the failure to demand the surrender and cancellation of the contract and the sort of explanation attempted add to the strength of said presumption.

III.    There is evidence that appellee never made claim the deed was anything more than security for the payment of the notes.    It is substantially without dispute that, after the deed had been made, appellee made promises to pay the notes; that, after he got out of the hospital, he "dunned" himself about the payment of the notes, and after he was out of the hospital several weeks, he said he would start making payment on them; that, at times, he fixed a definite date at which he would write a check in some stated amount, to take up a stated number of notes; that he seemed always to have something in immediate sight, wherewith to pay at a specified date, and said, on several occasions, he had the money coming, and what his hopes and aspirations were with reference to payment; and that he said, several months after he made deed, that he intended to have the rent of the deeded premises go to the payment of his obligations, and would rather have the defendants collect it than to be bothered about it himself.    The only conflict is this: One Evans, an entirely disinterested witness, testifies that, a few months after the execution of the deed and the agreement, the plaintiff desired to buy tires on credit, and said he wanted the tires so he might go out and collect money due him, wherewith to pay for the tires in a short time, and that then he would start paying the notes. This is substantially without denial.    The only denial is evasive, confused, and inconclusive.

3-a

Some of the notes matured after the deed was given, and later than the time allowed for obtaining a reconveyance.    When, at one time, defendant offered to reconvey, although the twelve months fixed in the contract had lapsed, plaintiff refused to accept the proposition.    The refusal was not based on any claim that the notes had been paid, but on the expressed ground that the proposal to reconvey included, not only the payment of notes then due, but others

that had not yet matured.

IV.   Appellee urges there is no evidence that security was requested; that there was no occasion to request it; that the word "mortgage" was never used in the transaction; and that the giving of a warranty deed, instead of a trust deed, of itself demonstrates the conveyance was intended to be absolute.   Counter arguments are made.   The vital point to which these arguments pro and con are addressed, is whether the writings made establish that the deed given canceled the notes.   We are of opinion that the writings here do not exclude the existence of a debt, because the deed recites that it is "in consideration of the sum of money still due on a Ford auto No. 77781," and the collateral agreement, that defendant agrees to deed back "inside of 12 months after the unpaid amount on the Ford auto No. 77781 is paid in full."   As seen, the deed recites that it is made in consideration of the exact sum of money "still due" on the automobile.   If it was intended to extinguish the debt by the giving of the deed, it is peculiar that the deed should so recite, and that the collateral contract should covenant to reconvey upon condition that there be paid "the unpaid amount on the Ford auto."   Not only do the writings fail to exclude the existence of a debt, but, in our opinion, their very face is strong evidence that there was no purpose to extinguish the debt.   Surely, plaintiff could not have intended that his conveyance should pay his debt, where he agreed that, in spite of the conveyance, the debt remained.

V.   For the argument that it will cause defendants no injury if the deed is held to cancel the notes, the appellee urges that the property conveyed was worth substantially double the amount of his debt.   This is not a suit in which appellants seek to recover damages.   In effect, they seek to foreclose a mortgage.   The defense is that the mortgage debt has been paid by the conveyance

3. MORTGAGES: absolute deed: evidence: value of property greater than debt.

of property. On such an issue, the argument that the company will profit if it concedes that to be an absolute conveyance which was, in truth, a mortgage is irrelevant. If a mortgage, the mortgagor cannot compel satisfaction of the mortgage by tendering property, no matter how much more than the mortgage debt the property is worth. But while this argument is irrelevant in favor of appellee, it furnishes another strong reason for holding that the transaction was merely a taking of security. The fact that property conveyed by deed is worth greatly more than a debt which it is claimed to have satisfied is strong evidence that a mortgage, rather than an absolute conveyance, was intended. It is true, the appellants urge that the property is worth much less than plaintiff claims; but that is of no avail to Holman. It merely tends to prove that the appellants are consistent in their claim that the deed did not cancel the notes. Even as it is an argument that the conveyance was not absolute because the property was worth greatly more than the debt, is it an argument that the creditor did not intend to extinguish his indebtedness for something worth greatly less than the debt. It appears further that the value of the property could not have influenced the appellants into canceling their indebtedness, because they did not know what the property was worth, at the time the deed was made. And this phase of the case furnishes other reasons for the position maintained by the appellants. If it had been intended to take the property absolutely, and by the taking to extinguish the debt, certainly some inquiry would have been made as to what the property was worth. The failure to inquire is, on the part of a business man, explainable only on the theory that the property deeded was only additional security, and that, consequently, there was no occasion to make a close scrutiny of its value. The same thought is further borne out by the fact that the mother made no attempt to sell the property

elsewhere, makes no claim she ever asked appellants what they would give for it, made no attempt to get them to pay a difference, and that, though it appears the property conveyed was mortgaged, no provision was made for having the buyer assume the mortgage. Everything indicates that the case is within *Kinkead v. Peet,* 137 Iowa 692, 695, which holds the fact that the defendant did not examine the property, had no knowledge of it, made no investigation in regard to it with a view to the purchase, is a circumstance which tends to show that no sale was contemplated or intended when the deed was accepted. The parties really reach the conclusion that, for different reasons, neither intended absolute conveyance and the extinguishment of the debt thereby. They merely proceed to it by different routes.

4. MORTGAGES: nature and requisites: absolute deed: insufficiency of evidence.

VI. At a time when the notes given by plaintiff, if still uncanceled, were largely unpaid, the defendants sent appellee a statement, demanding payment of his open account; and appellee urges that this is inconsistent with the claim that defendants thought the note debt was still alive. It appears that, long after the deed was made, defendant, by means of Exhibit A-5, sent Holman a statement, demanding payment of his notes. We are of opinion this is additional evidence that defendants claimed the notes had not been canceled, and that the sending of the statement demanding settlement of open account furnishes no evidence that the conveyance extinguished the notes.

VII. The last note did not mature until 25 months from date, and, therefore, did not mature until a considerable time after the deed was made. Appellee contends this is evidence that the notes were canceled by the deed, because the collateral agreement did not provide for a reconveyance when the last note became due, but fixed the time

for payment to obtain a reconveyance at twelve months after the date of the contract. A sufficient answer, as it seems to us, is that it is not impossible to make a mortgage payable earlier than the maturity of notes secured by the mortgage. And it will be remembered the agent of the plaintiff testifies she did not know any notes existed. Whatever appellant may do, appellee is hardly in position to say that this is an untrue statement. If it be true, it will explain why the time limit fixed for the claimed repurchase is made without reference to the maturity of the last note. The maturity of that note could not control one who did not know of its existence. It may be added for what it is worth that the managing partner of defendant testifies it was always the understanding of defendant there should be a reconveyance whenever the notes were paid, whether it was done within the twelve months or not, and that appellants have been at all times ready and willing to reconvey, no matter when the notes were paid, and were ready to do it now, and that they made proffert to do so.

There are many circumstances revealed in the record that, to some extent, add to and detract from the respective contentions made. As we have already said, it is not the function of an opinion to reabstract the abstracts. We think that what we do deal with expressly affords some evidence that all of the record has been carefully read and considered; and that is the fact. We rest our conclusion upon what we have specifically dealt with and many things not specifically adverted to. On the whole, we are clearly satisfied that the court erred in holding the transaction before us to have been anything more than the giving of an additional security. And the cause is remanded for further action in harmony and not inconsistent with this opinion. —*Reversed.*

LADD, C. J., EVANS and PRESTON, JJ., concur.