## WILLIAM ENNOR

*v.*

## GEORGE THOMPSON.

1. ACKNOWLEDGMENT OF DEEDS—*cannot be proved, varied or explained by parol.* Parol evidence is inadmissible to show what a wife did acknowledge, when she was before the officer who took her acknowledgment.

2. The statute requires that every thing essential to an acknowledgment must appear in the certificate, to bar the wife's dower, and such is the construction given to the homestead act.

3. An acknowledgment of a deed cannot rest partly in writing and partly in parol—it must all be in writing.

4. PRESUMPTION. The appellee was indebted to the appellant in several sums, for which the latter held deeds of trust on real estate. On the 22nd of February, 1864, a new arrangement was entered into between the parties; appellee conveyed the land by a deed, absolute in terms, to the appellant, and the latter gave back an obligation to re-convey, upon the payment, by appellee, of $850, in American gold, by the first of the ensuing November: *Held*, that this sum covered all indebtedness at that time, operating as a lien on the premises.

5. MORTGAGE—*whether a deed, absolute on its face, is a mortgage.* It is a rule of equity, that once a mortgage, always a mortgage, until the equity of redemption is foreclosed or barred.

6. When the mortgagor has conveyed the mortgaged premises to the mortgagee, it only operates as a bar to the equity of redemption, when it clearly and unequivocally appears that both parties so intended it should; otherwise, it will only be regarded as a mere change in the form of the security.

7. Where the mortgagee retains the evidence of the indebtedness, after receiving a deed, absolute in terms, of the mortgaged premises, and gives back a lease to the grantor, and receives rents, equity will regard his deed as a mortgage.

8. COSTS—*in chancery proceedings, when in the discretion of the court.* The 15th section of chapter entitled Costs, declares that when the complainant shall dismiss his bill, or the defendant shall dismiss it for want of prosecution, the defendant shall recover full costs against the complainant; but in all other cases in chancery, not otherwise directed by law, it shall be in the discretion of the court, to award costs or not, to the parties.

9. Where the complainant's bill is not dismissed, the court has the discretion to award costs as it shall deem proper, and when this discretion has been exercised, it will not be reviewed in the Supreme Court.

APPEAL from the Circuit Court of Jo Daviess county; the Hon. BENJAMIN R. SHELDON, Judge, presiding.

This was a bill in chancery, filed by George Thompson, the appellee, against William Ennor, the appellant, William B. Green and William Fiddick, in the Circuit Court of Jo Daviess county. The land in controversy is described as the east half of the north-east quarter of section 35, town. 29, north range 1 east, and was claimed in fee and as a homestead. The bill sets out a deed of trust for said lands, to William B. Green,

dated April 7, 1855, to secure a note of $300, of same date, due George Redfern, due one year after date, with ten per cent. interest, and the assignment of said note to the appellant, William Ennor, soon after the same was executed.

The bill also sets out a deed of trust for the same lands to William Fiddick, dated June 13, 1857, to secure a note of that date to the appellant for $175, payable December 13, 1857, with ten per cent. interest.

The bill further alleges, that the appellant was the holder of the two notes above specified, on the 1st day of November, 1858, and that he, on that date, merged the two notes in one new note of that date, for $500, payable to his own order in one year, with interest at ten per cent., and secured the same by deed of trust of that date, to William Fiddick, trustee, on the same land above described and claimed as a homestead.

That the appellee could neither read nor write, and trusted Ennor's word that he would cause the two deeds first named, to be satisfied of record, and supposed they were so satisfied, until recently.

That appellee was unable to pay the interest as it fell due on said note, and on the 17th day of May, 1862, appellant calculated the interest due at fifteen per cent., and figured the principal and interest at the sum of $810, for which appellee gave a new note, secured by a new deed of trust, both dated May 17th, 1862, the note payable to William Ennor, the deed of trust to William Fiddick, to secure the payment of said note. The note was payable on the 1st day of November, 1862, and the deed was on the same land above described, and claimed as a homestead. The new note also drew ten per cent. interest.

That on delivery of the last named note for $810, and deed of trust to secure the same, the said Ennor delivered up to said appellee, the $500 note, dated November 1st, 1858, and accepted the $810 note in full of all claims to date, May 17th, 1862.

That on the 24th day of December, 1862, the appellee and his wife, executed to appellant a warranty deed of that date for the same land above described, in order to avoid the Government tax on money loaned, and agreed to pay on the consideration of said deed ( $850) the sum of $100 per annum, to be called rent, instead of interest.   The said warranty deed did not convey the homestead, and was designed only as a security for the debt due.

That the $810 note was not given up by said Ennor, he saying that he could not find the note, but that he would find it and restore or destroy it, and cause the deed of trust of May 17th, 1862, to be duly satisfied of record.   Also sets up usury.

Sets up payment of interest ( as rent) and an agreement in writing, executed February 22d, 1864, written by Ennor on the back of a receipt for rent, as follows :

" I, William Ennor, do bind myself, my heirs or administrators or assigns, to deed over to George Thompson, or his assigns, the within mentioned farm of land, by him or them paying to me or my assigns, the sum of eight hundred and fifty dollars in American gold, on the first day of November next, 1864.

Dated this 22d day of February, 1864.

[ Revenue stamp.]          ( Signed,)          W. ENNOR."

Sets out the receipt, on the back of which the following agreement was written :

" Received of Geo. Thompson, this 22d day of February, 1864, one hundred dollars, in full of all demands for rent of the farm rented to him, and now in his possession, until the first day of November next.   Then he is to deliver it over to me, or pay me the next year's rent in advance.

                ( Signed,)                    W. ENNOR."

That he went to Idaho, and returned and offered to pay Ennor the balance due him, and Ennor demanded American gold.

28—46TH ILL.

That appellee afterwards offered to pay appellant $1,200 in national currency, which Ennor refused, and claimed to be the absolute owner of said land. Also alleges that he has not in any of said deeds, legally waived the right of homestead, as he is advised by counsel.

That appellant, relying on his deed, commenced an action of ejectment, and on trial, produced no deed of trust, but his deed of warranty, and on a certain ruling of the court, on the question of homestead, took a voluntary non-suit.

That appellant, wickedly designing to injure and defraud, etc., did not satisfy either of said four deeds of trust of record, or procure the same to be done, and has retained two of the notes, and has refused to re-convey or satisfy said deeds.

That appellant caused said land to be advertised for sale under two of said deeds of trust, the deed to William B. Green to secure Redfern, and the one to William Fiddick, to secure the $810 Ennor note, and alleges that both said notes had long before that time been paid, and that Ennor's sole claim was $850; shows that appellee had offered to pay what he considered due Ennor, and Ennor's refusal to re-convey, and charges that the said Green and Fiddick, trustees, etc., have combined and confederated with Ennor, and other persons unknown, to injure and oppress said appellee, and are intending to sell said land under said deeds of trust.

Sets up that Ennor wickedly and fraudulently pretended to appellee, that he had mislaid or lost or destroyed the notes secured by said deeds, and that said deeds had been satisfied of record, and that the warranty deed was only a mortgage for $850.

That Ennor, since December 24th, 1862, has never made any claim under either of said four deeds of trust until now.

Charges the exaction of usurious interest by Ennor, twenty per cent. per annum, to November 1st, 1858, and fifteen per cent. afterwards.

Alleges the principal sum now due to be only $475, without interest, and avers his readiness to pay whatever is found to be due, upon an account being taken.

The bill claims the benefit of the homestead exemption laws of this State.

Prays that William Ennor, William B. Green and William Fiddick be made defendants, and for answer of defendants, their oaths being waived.

Asks for a re-conveyance of the premises, and that the deed of trust be canceled and returned to the complainant, and general prayer for relief.

The defendants filed their answers, denying the material allegations of the bill.

Replication.

The court, upon the hearing, made a decree, as follows:

Decree sets forth that the warranty deed of December 24th, 1862, be declared to be a mortgage to secure the payment of the sum of $850; that usurious interest was received by defendant, Ennor, from complainant, Thompson, at the rate of one hundred dollars a year for three years after said date, on said sum of $850; fixes the amount to be paid by said Thompson to said Ennor at the sum of nine hundred and twenty dollars and thirty-one cents; orders Thompson to pay that sum into the hands of the clerk of the Circuit Court within thirty days, with interest from December 24th, 1862, at six per cent. per annum, to be paid to said Ennor, who shall, within ten days after the payment of the money to the clerk, deliver into the hands of the clerk, all the deeds of trust, with the three notes secured by said deeds, together with his quitclaim deed to the lands described as the east half of the northeast quarter of section thirty-five, (35) township twenty-nine, (29) north of range one, (1) east of the 4th P. M.; and the defendant William B. Green, is ordered to enter satisfaction upon said records of the proper office, of the deed of trust, dated April 7, 1855, above referred to; and the said defendant, William Fiddick,

is ordered to enter satisfaction upon said records of the three remaining deeds of trust. All which acts above specified are to be done by said defendants, respectively, within thirty days after the payment of said money by complainant Thompson; on failure of said defendants to perform said acts, Matthew Marvin is appointed special master in chancery to satisfy said records and execute said deeds at the expense of the defendant so failing or refusing to perform this decree. All deeds heretofore executed by said defendants, attempting to convey said lands from one of said defendants to another, are declared null and void from and after the time of the aforesaid payment of $920 31-100, by said Thompson to the clerk as aforesaid; and that in case of failure on the part of said Thompson to pay said money within thirty days, the bill shall stand dismissed; and it is further ordered that each party pay half of the costs in the case.

The defendant, William Ennor, brought the case to this court by appeal.

There is a voluminous record of evidence taken on the hearing, which it is deemed useless to set forth, as the main facts upon which the opinion is based are stated therein.

Mr. A. L. CUMMINGS, for the appellant.

Mr. OLIVER C. GRAY and Messrs. SMALL & MILLER, for the appellee.

Mr. JUSTICE WALKER delivered the opinion of the court:

The court below committed no error in suppressing the deposition of Henry C. Park. By that deposition, appellant attempted to amend a defective acknowledgment to the deed of trust executed by appellee, for the premises in controversy, to

appellant. It is an attempt to prove by parol what appellee's wife did acknowledge when she was before the justice of the peace, outside of the certificate attached to the deed. The statute has required, that all that is essential to an acknowledgment shall appear in the certificate, to bar the wife's dower, and such is the construction given to the homestead act. This acknowledgment cannot rest partly in writing and partly in parol; it must all be in writing. It is so required to protect the wife in her rights. The statute has declared, that in this mode, and this alone, can the wife bar her rights. Our statute has adopted this as a more convenient mode than that provided by the common law, which required that the acknowledgment should be made in open court by fine or recovery, and it always became a matter of record. And the certificate of acknowledgment has taken its place, and like it, is required to be reduced to writing, and certified under the hand of the officer. We know of no case, in practice or reported, which has held that a defective certificate of acknowledgment may be aided by parol.

This preliminary question disposed of, we now come to the merits of the case. Whatever may have been the condition of the indebtedness from appellee to appellant, prior to the 22nd of February, 1864, or whatever may have previously been the amount which constituted the consideration, we regard as unimportant to the decision of this case. On that day a new arrangement was entered into by the parties. Appellee conveyed the land by a deed, absolute in terms, to appellant, and he gave back an obligation to re-convey upon the payment by appellee of the sum of eight hundred and fifty dollars, in American gold, by the first of the ensuing November. This, to our minds, is very clear and satisfactory evidence that this sum covered all indebtedness at that time, operating as a lien on the premises.

It is urged, that this sum did not embrace the amounts secured by the other deeds of trust, and the decree is for too

small a sum, even if the deed is to be treated as a mortgage. When it is remembered that this deed is for the same land on which the other securities existed, and that when this deed was executed, appellant gave an obligation to re-convey the land to appellee, if he should pay to him, by the first day of the next November, eight hundred and fifty dollars in American gold, the conclusion is almost irresistible, that it covered all of the indebtedness. Had this not embraced the entire indebtedness, we cannot believe, from appellant's previous course, in always taking security, that he would have agreed to re-convey the land, and thus have relinquished all liens, for money not embraced in that sum. Again, the justice who drew the deed, understood the sum specified in it to embrace all of the indebtedness, and we do not see that this presumption has been rebutted. The parties having thus ascertained that sum to be due, and no sufficient evidence appearing to require it, we regard it unimportant to state the account to ascertain how that was determined to be the correct amount.

Having determined that this was the amount then due, the next question presented is, whether the conveyance then made operated as a satisfaction of the debt, and absolutely passed the title to appellant. The previous deeds of trust on the same land, and to secure the same indebtedness, were in effect but mortgages, and are so treated in equity. And it is a rule of equity, that once a mortgage, always a mortgage, until the equity of redemption is foreclosed or barred. Then did this transaction change the relations of the parties, or did the deed of February, 1864, although an absolute conveyance, in form, only operate in fact, and equitably, as a mortgage? When the mortgagor has conveyed the mortgaged premises to the mortgagee, it only operates as a bar to the equity of redemption, when it clearly and unequivocally appears that both parties so understood and intended it should. Otherwise, it will only be regarded as a mere change in the form of the security.

The justice of the peace who drew the deed, testifies that appellant came to him and stated that appellee was indebted to him on one or two deeds of trust, and that the amounts secured by those deeds of trust formed the consideration of the deed of February, 1864. That appellant said at the time that appellee was hard pressed, and was going to Idaho to get money to redeem, and he wanted the matter in such shape as to be safe, and not to have to purchase the land; that when appellee came back, he should have it if he was able to pay for it. He says that he supposed this deed covered the whole indebtedness, but that appellant might have spoken of another deed of trust; but he says he was certain that appellant spoke of the deed as a security. This evidence is strong to the effect that appellant only intended the transaction as a security for the debt.

Again, this evidence is greatly strengthened by that of James, who testified that appellant told him, in the early part of the summer of 1864, that appellee owed him $800, or $850—he thinks the latter sum. That he said he had a deed for appellee's farm, and if he did not pay it soon, he would claim the place. Emma Thompson testified that appellant stated to their family that the interest was paid till November, 1864, in advance. This evidence can hardly leave a doubt that it was intended as a security, and that the rent was intended as interest on the debt.

Independent of this evidence, there seems to be another circumstance which gives character to the transaction, and that is, that apppellee's notes were not canceled or surrendered to him. If appellant intended to render his title absolute, and to satisfy the debt, why retain the notes as evidence of the debt? Had such been intended, he would, unquestionably, have surrendered them, or satisfactorily accounted for a failure to cancel them. In *Sutphen* v. *Cushman*, 35 Ill. 186, it was held, that the retaining the evidence of the indebtedness, after receiving a deed, absolute in terms, of the

mortgaged premises, giving back a lease to the grantor and receiving rents, characterize the transaction a mortgage. That case is decisive of this, on this question.

By the arrangement of the 22d day of February, 1864, the indebtedness then due to the appellant was $850, payable to him on the first of November following, as he states in his obligation to re-convey to appellee. And this obligation was written on the back of a receipt for $100, for all rents due up to that time. And we find that the lease was renewed on that date, on the same terms that were contained in the lease. The receipt specified that appellee was to surrender possession on the first of November, or pay the next year's rent in advance. The amount of the rent was fixed by the lease at $100 a year. We may, therefore, safely infer that the rent was paid in advance for the year 1864, and that it was the same in amount.

Then, if the interest should be computed at six per cent., and as the obligation to re-convey does not specify any rate of interest, it should only bear that rate, we will find that the decree is for too large an amount, when this $100, paid on the first of November, 1864, is deducted. And if interest were computed on the principal sum at ten per cent., the decree would be too small by but a few dollars. There was, therefore, no error of which appellant can complain in stating the account. Nor does it matter that the court below may have made the computation on a different basis.

Defendants Green and Fiddick each held deeds of trust on this land, which were satisfied and discharged by the deed to appellant, and they were a cloud upon the title. When the sums were discharged, to secure which they were executed, it became the duty of the trustees to re-convey the property to appellee; and if they failed or refused to comply with the decree requiring them to re-convey, it was no more than just that they should be required to pay the cost of a re-conveyance

by the master. If desirous of avoiding the expense, it was only necessary for them to comply with the decree. There was no error in this, even if a writ of error could be prosecuted on a decree for costs of this character.

The fifteenth section of chapter entitled "Costs," declares that where the complainant shall dismiss his bill, or the defendant shall dismiss it for want of prosecution, the defendant shall recover full costs against complainant; but in all other cases in chancery, not otherwise directed by law, it shall be in the discretion of the court to award costs or not, to the parties. In this case, complainant's bill was not dismissed, and hence the court had the discretion to award costs as he should deem proper, and having exercised that discretion it is not subject to be reviewed. A fair construction of this decree only requires appellant and appellee each to pay one-half of the costs, in case the appellee should pay the money into court, as required by the decree; but failing in that, appellee's bill was ordered to stand dismissed, and in that event no provision was made as to costs, and a further decree would have been necessary, finding that appellee had made default, and that his bill be dismissed at his costs. Although the order was made that the bill should be dismissed if the money was not paid, yet the clerk could not find that fact in vacation. It could only be determined by the chancelor when acting as a court, at the next or some subsequent term. At the next term the default might have been contested, and appellee might have shown ground excusing the non-payment of the money so as to have avoided a dismissal, which was only conditional. The case would not have passed from the docket on the failure to pay the money, under this decree, but would have awaited the further order of the court. The decree of the court below must be affirmed.

*Decree affirmed.*