## MEEKER v. SHUSTER et al.

### S. F. No. 374; January 23, 1897.

#### 47 Pac. 580.

**Ejectment.—A Grantee of a Deed Absolute on Its Face cannot Maintain** ejectment thereon, where his grantor merely held the title as security for a debt which the grantee paid, and at the same time executed a bond to the original mortgagor in which he agreed to convey if the amount expended by him was repaid, with interest, by a specified time, since the instrument was a mortgage.[1]

APPEAL from Superior Court, Sonoma County; S. K. Dougherty, Judge.

Ejectment by M. C. Meeker against Sarah E. Shuster and others. From a judgment in favor of defendants and from an order denying a motion for a new trial plaintiff appeals. Affirmed.

Thos. Rutledge for appellant; C. S. Farquar and T. J. Butts for respondents.

HAYNES, C.—This is an action of ejectment brought by the plaintiff to recover possession of certain lands in Sonoma county of which, it is alleged, he is the owner in fee and entitled to possession. Judgment was entered for the defendants upon the findings, and plaintiff appeals therefrom and from an order denying his motion for a new trial.

John Shuster, the husband of Sarah E., and father of the other defendants (James E. and Jacob F. Shuster), died seised of the demanded premises in July, 1883. On June 1,

---

1 Cited in Meeker v. Schuster, 4 Cal. App. 297, 87 Pac. 1103, a foreclosure suit between the same parties, in which the judgment-roll of the former case was held to be res judicata as to an instrument, in form a deed, being actually a mortgage—the mortgage sought to be foreclosed.

1879, said John Shuster executed to Aaron Barnes his promissory note for $5,482.89, with interest, and a mortgage upon said premises to secure the same. On September 29, 1883, the claim of said Barnes upon said note and mortgage was allowed by the administrator of the estate of said John Shuster in the sum of $7,282.40. Said lands were inventoried at $8,000, and the personal property at $961.50, and a sale of said lands was ordered by the court to pay the debts of the estate. The defendants, the widow and two of the sons, desired to purchase the land, and applied to Barnes, the mortgagee, for assistance, and he consented to aid them in making the purchase. By arrangement with her said sons, the widow bid in the property at $11,000, each of the defendants putting in the amount of their several interests, and receipted to the administrator therefor, and Barnes also receipted for the amount of his mortgage claim, and made some other advances; and the administrator, with the assent of the sons who were interested in the purchase, conveyed the land to the widow, who, with her said sons, was then, and ever since has been, in possession. Said conveyance was made December 3, 1883, and on the same day the widow conveyed the same land to said Barnes by a deed absolute on its face, and at the same time Barnes executed to the defendants a bond, whereby he agreed to convey to them the same lands on or before December 3, 1893, upon payment of $11,000, with interest at the rate of nine per centum per annum, the taxes on said premises to be paid equally by the first and second parties until one-half of the principal sum and interest should be paid, and after that the whole of the taxes were to be paid by the widow and her sons. On October 5, 1892, pursuant to an arrangement between the plaintiff and the defendants in this action—the character and purpose of which is the principal question presented on this appeal—Meeker paid to Barnes the amount then due him from the defendants, the said bond executed by Barnes was canceled, and Barnes executed and delivered to Meeker a grant, bargain and sale deed for the said premises, and Meeker executed to the defendants a bond by which he agreed to convey the same premises to the defendants, upon payment, on or before October 5, 1902, of the sum of $8,440, Meeker to pay all taxes, and the defendants to pay interest at the rate of eight per centum per annum, payable semi-annually, and

if not so paid to be compounded. It was further agreed that Meeker would "accept payments in part or in full on this bond at any time before maturity, and to make deed when the full amount is paid." This action was commenced May 28, 1894, and was preceded by a demand that defendants remove from the premises and deliver possession to plaintiff's agent. The evidence shows that defendants were in arrears in the payment of interest, but no reference is made to that fact, either in the demand for possession, or in the complaint, which is in the usual form in ejectment, alleging that the plaintiff is seised in fee and entitled to possession. The complaint was not verified, and the answer is a general denial.

The court found, from evidence entirely satisfactory to us, that the transaction between Barnes and the defendants was a loan, for which the deed was taken as a security; that the amount mentioned in the bond given by the plaintiff was the amount then due from the defendants to Barnes; that said sum was loaned by the plaintiff to the defendants to enable them to cancel their indebtedness to Barnes; that plaintiff, at the time said instrument was executed by Barnes to him, and which purported to be an absolute conveyance, knew the character of the interest Barnes had in said land; that the instrument executed by Barnes to him was not intended to pass the title to him; and that plaintiff is not the owner or entitled to the possession of the demanded premises. The findings are very full and minute, several of them being of probative facts merely, but the ultimate facts are also fully found. Many of the specifications of alleged insufficiency of the evidence go to the findings of probative facts relating to the settlement of the estate of John Shuster, deceased, the amounts due Barnes, and other facts of like character; but, concerning these, it need only be said that the amount due Barnes from the defendants was mutually agreed upon and paid, and that sum constitutes the basis of the transaction between plaintiff and defendants which is involved in this action, and the sole question is whether the plaintiff bought and paid for the land, and acquired the title thereto, and then sold it to defendants, or whether the amount he paid Barnes was a loan to defendants, and the deed and bond in effect a mortgage to secure it.

That the deed to Barnes was given and received as a security for money loaned is beyond question. His advance-

ments, including the amount due on the mortgage given him by John Shuster in his lifetime, were for the express purpose of enabling the defendants to purchase the land in question. He testified that he took the deed, instead of a mortgage, for the reason that he supposed the taxes would be less upon the land than upon the mortgage, and that he would be saved the expense of a foreclosure in case he was not repaid; and, in reply to the following question put by the court, namely, "When you entered into this transaction with the Shusters did you think you were buying the land, or did you think you were loaning money?" he said, "Well, I thought I was loaning money." Touching the transaction with the plaintiff, Mrs. Shuster and her son Jacob testified to a conversation with the plaintiff some five or six months prior to the execution of the deed from Barnes, and the plaintiff, in rebuttal, testified that in that conversation Mrs. Shuster asked him to buy the property, and he replied that he "didn't want the property"; that Mrs. Shuster wanted to give a mortgage, and in reply to that proposition we quote the following from his testimony: "I told her I didn't want to take a mortgage; that if they failed to pay the interest I had to foreclose; that it was more than the property was worth. Then Mrs. Shuster said she would take the deed from Mr. Barnes, and deed to me, and I would give her a bond to purchase the property. I told them that was nothing but a mortgage, or the same thing as a mortgage." The witness then proceeded to explain the matter of taxes, and continued as follows: "I then explained to all present that, if they were to take the deed from Mr. Barnes, the title would be vested in them. Then they would deed to me, and I would give them a bond. The supreme court had said that it was a mortgage. I then asked the question how much money they required. The talked the matter over pro and con, and they thought they needed about $8,440." The plaintiff further testified: "The papers were signed, and we said we would go to the bank, and I would pay Mr. Barnes. We then all went to the recorder's office, and the Shusters and Barnes canceled the bond. I then filed my deed for record and the Shusters filed the bond for record. As we came out Jacob Shuster made the statement that Hitchcock had said he would give them $12,000 for the place any day. I remarked: 'Well, you ought to get $13,000 or $14,000 for

the property.' I did not say they ought to sell for less than that.''

From the testimony of the plaintiff it is perfectly clear that the transaction between him and the defendants was a loan upon security, and not a purchase by the plaintiff. He had refused to buy. The money paid by plaintiff was the precise amount due from defendants to Barnes. He informed defendants that the deed and bond was a mortgage, and had so been held by the supreme court, the difference being that the taxes would be less upon the land than upon the mortgage, and that a foreclosure would not be necessary. As to the facts involved, and the purpose of the transaction, there can be no question. That plaintiff was mistaken as to the legal effect does not change the rights of the parties. That a deed, absolute upon its face, when given as security for a debt, or for money loaned, is a mortgage, and not a transfer of the legal title, is too well settled in this state to require citation of authorities. It was a loan of $8,440 payable in ten years, with the privilege of payment of the whole or any part of it, at any time before maturity, with interest at the rate specified, to be paid semi-annually, or to be compounded. But, if the transaction amounted to a sale to the plaintiff and a resale to the defendants, this action could not be sustained, since there was no provision in the bond that it should be forfeited for the nonpayment of interest, and no part of the purchase money was due.

We are referred by appellant to Mahoney v. Bostwick, 96 Cal. 58, 31 Am. St. Rep. 175, 30 Pac. 1020, Penney v. Simmons, 99 Cal. 382, 33 Pac. 1121, and many other cases, to the proposition that ''the testimony must be so clear and convincing that both parties intended it as a mortgage as to leave in the mind of the trial court no doubt as to the intention of the parties; otherwise, the writing should prevail.'' In the first of the cases above cited it was said: ''But whether the evidence is of such character and strength as to produce conviction is a question for the trial court to determine.'' And this is repeated in almost the same words in the second of said cases. But in this case, if we were required to be satisfied, from a review of the evidence, that the court below rightly determined the character of the transaction before we could affirm the judgment, we could not hesitate to affirm it. Section 2924 of the Civil Code provides: ''Every transfer of

an interest in property other than in trust, made only as a security for the performance of another act, is to be deemed a mortgage, except when in case of personal property it is accompanied by actual change of possession, in which case it is deemed a pledge'': See, also, Montgomery v. Spect, 55 Cal. 352. If the transfer created a trust, as contended by appellant, it would not aid him, since in that case the terms of the trust were evidenced by the bond, and the trustee of the title could not claim the possession until the bond should be forfeited or canceled by the defendants. It was not a trust, however, in the sense of the statute, but a mortgage. The findings are justified by the evidence, and the conclusions of law were correctly drawn therefrom. The judgment and order appealed from should be affirmed.

We concur: Searls, C.; Belcher, C.

PER CURIAM.—For the reasons given in the foregoing opinion the judgment and order appealed from are affirmed.