AUGUSTA A. KEELINE, Appellant, v. A. A. CLARK, ET AL., Appellees.

When a deed shall be held a mortgage: EVIDENCE. An unconditional deed with a separate contract for resale will not be held an absolute conveyance, where from all the present and subsequent circumstances it is evident the parties intended the transaction to be a mortgage. In the instant case the evidence is held to show that the deed was given as security for a loan.

Same: INADEQUACY OF PRICE. Gross inadequacy of price is a circumstance to be considered in determining whether a deed absolute on its face was intended as a mortgage.

Deeds: EFFECT OF POSSESSION. Possession under a deed is not under all circumstances conclusive that it was intended as an absolute conveyance.

Homestead: CONVEYANCE OF. A deed to a homestead executed by the husband under a power of attorney from the wife is not in compliance with the statute and void.

*Appeal from Pottawattamie District Court.*— HON. A. B. THORNELL, Judge

THURSDAY, MARCH 8, 1906.

REHEARING DENIED, WEDNESDAY, NOVEMBER 21, 1906.

ACTION in equity to quiet title in plaintiff to certain real estate situate in the city of Council Bluffs. In a

second count to the petition plaintiff claims that a deed purporting to convey the legal title to the property in question to defendant Clark, and under which he (Clark) claims title, was obtained from her by fraud and by force and duress, and, further, that such deed was accepted and title thereunder taken and is now held by said Clark only by way of security for moneys loaned to her husband, W. C. Keeline. The prayer for relief is in the alternative — that said deed may be declared void and her title quieted, or, if this be denied, that it may be decreed that defendant holds title as for security only, and that the amount due him after deducting rents and profits may be ascertained, and that she be allowed to redeem the property. The answer of the defendant Clark, who alone appeared, asserts his ownership of the property under deed from plaintiff and her husband, and denies the other allegations of the petition. In a cross-petition defendant asks to have his title quieted, and that plaintiff, who by stealth and fraud has entered into possession of the property since his purchase and now has possession thereof, may be evicted. The trial resulted in a decree dismissing the petition of plaintiff, and granting to defendant the relief prayed in his cross-petition. Plaintiff appeals.

*H. L. Robertson,* for appellant.

*Flickinger Bros.* and *John M. Galvin,* for appellees.

BISHOP, J.— Up to September 24, 1901, the legal title to the real estate in question stood in the name of plaintiff, and for many years the property had been occupied by plaintiff, her husband, and their children as a homestead. On said date there was executed and delivered by plaintiff and her husband, W. C. Keeline, a conveyance of said premises, in form a warranty deed, to defendant Clark, subject, however, to three mortgages to E. E. Hart, aggregating $2,-

201.50, which mortgages, as provided in the deed, were assumed and agreed to be paid by Clark. Contemporaneous with said deed plaintiff and her husband executed a further writing as follows: "Having sold our home this day to A. A. Clark and having received the full consideration for same, we now agree to deliver up possession of the same to said Clark on or before October 15, 1901." Also contemporaneous with said writings, Clark executed and delivered to plaintiff and her husband an "option to purchase" the property in question within one year and for the sum of $1,300, plus taxes and interest which might be paid on the Hart mortgages. There is some controversy as to the amount paid by Clark to the Keelines at the time, but we think it fairly appears that the amount was $1,000. Within a few days after the transaction thus taking place the Keelines left for Colorado, and Clark took possession of the property through a tenant. Matters stood thus until in March, 1902, when W. C. Keeline having returned to Council Bluffs, he executed a note for $60 due September 24, 1902, to Clark, and among the provisions of such note was the following: "And to secure the payment of this note I hereby convey to the said payee an option given by A. A. Clark on premises," etc., making reference to the property in controversy. It is certain, however, that the option writing was not at the time delivered to Clark. In July, 1902, Clark executed a new "option to purchase." This provided that the Keelines might, on or before September 24, 1903, purchase the property in controversy upon payment of $4,800, plus taxes and interest which may have been paid on the Hart mortgages. "Clark to pay the principal of the Hart mortgages or deduct the balance due thereon from the $4,800 payable under the terms of this option, and such sums as may be paid for the care and repairs of said premises — but not to exceed $100." The Keelines indorsed upon such writing an acceptance of the conditions thereof, and on the same day the old option was

" for value received assigned to A. A. Clark." It is con-
ceded by Clark that at the time, and for no other considera-
tion, he paid to the Keelines the sum of $600 in money; that
he delivered up to W. C. Keeline his note for $60 of date
in March, 1902, and also forgave him a minor indebtedness
for money borrowed of either $10 or $20, he does not re-
member which. September 29, 1903, W. C. Keeline ap-
peared at the office of Clark in Council Bluffs — plaintiff
being still in Colorado — having in his possession a power
of attorney from plaintiff to lease, option, or sell the premises
in controversy. On that day Keeline executed to Clark an
instrument acknowledging receipt of the sum of $50 in part
payment for all right, title, and interest of Augusta A. Kee-
line and W. C. Keeline in the premises in controversy —
designated in the writing as the tract " described in the
power of attorney from A. A. Keeline to W. C. Keeline
hereby attached." It is then provided that, in considera-
tion of said sum and the further sum of $50 to be paid on
delivery of deed, " the undersigned agree to convey to said
Clark the above premises by deed of general warranty, ex-
cept mortgages to Hart." The writing is signed by Keeline
for himself, and as attorney for his wife. By deed bearing
the same date, Keeline, acting for himself and as attorney
in fact for his wife, executed and delivered to Clark a deed
for the premises; such deed reciting a consideration of $100.
The amount of money paid Keeline on this occasion is also
in dispute.

I. Taking this fact outline as a basis, we may now go
directly to the matters of contention as presented in argu-
ment. We shall not stop to question the correctness of the
decree so far as it involves a finding that,
upon the whole record, the court was not war-
ranted in setting aside the deed of September,

1. WHEN A DEED
WILL BE HELD
A MORTGAGE:
evidence.

1901, on the ground of duress. Suffice it to say that the
evidence brings the question very close to the border line,
and, if the finding of the court had been the other way, we

should have hesitated long before disturbing it. Accepting of the initial deed, then, as voluntarily made, we have the question of the effect thereof — whether it shall be given force as a matter of security for the payment of money, or, on the other hand, as an unconditional conveyance of the fee title. If the latter, of course the decree was right as a whole, and should be affirmed. If the former, then plaintiff should be decreed a reconveyance upon payment being made by her of the amount necessary to redeem. Without difficulty we reach the conclusion that the conveyance was intended for the purposes of security only, and hence should be treated as a mortgage. It seems to be the thought of counsel for appellee that the form adopted in the transaction — that is, a deed unconditional on its face and a contract for resale separately executed — forbids the conclusion that a mortgage only was intended. But such is not the rule in this State. A court of equity will inquire into the transaction, and, having ascertained the real intention of the parties from all the facts and circumstances, will decree the true character thereof; and it will be held a mortgage if the party asserting it to be so has sustained the burden which the law casts upon him of making proof; otherwise it will be declared what, upon its face, it purports to be, a sale with contract of repurchase. *Bigler v. Jack,* 114 Iowa, 667. The subject was gone over and the authorities collected with such fullness in the opinion by Deemer, J., in the case cited, that we need not extend this opinion by further citation or discussion.

The circumstances of the instant transaction were these: W. C. Keeline, the husband of plaintiff, was an habitual drunkard. He had squandered all his property, except an interest, as claimed by him, in a mine located in the State of Colorado. Being desirous of going to that State to look into his mining interest, he applied to defendant Clark for money, with the result that he went home and demanded of plaintiff that she consent to pledge the homestead as

security for a loan. At first she refused, but finally yielded, under pressure of threats and acts of intimidation. The parties, husband and wife, then went to the office of Cook, and thence to an attorney's office, where the papers were drawn up. Plaintiff, as a witness, says that the only understanding she had of the transaction was that a loan was being made to her husband, to secure which she was pledging her homestead; that defendant so characterized the transaction. W. C. Keeline testified that he was intoxicated at the time; that so far as he had any understanding it was that he was going to get some money, and that the home was to be given as security. On the other hand, Clark testified that the transaction was clearly explained to both plaintiff and her husband as an unconditional sale with a contract for resale, and that he declared to them that he would not proceed on any other understanding; and his testimony on this subject finds corroboration in the record. Now, if this were all, it is probable that we should not be moved to disturb the decree. But the subsequent happenings, especially the course of conduct on the part of defendant, tend so strongly to support the contention of plaintiff that the conclusion for reversal seems irresistible. It is a maxim as old as the institution of equity jurisprudence that in cases of variance the substance of a transaction shall prevail over the form. And in cases such as the one before us the substance of the transaction takes in, not only the relevant facts leading up to the main event, but the subsequent acts and conduct of the parties tending to disclose their real intentions. *Hughes v. Sheaff,* 19 Iowa, 343; *Bridges v. Linder,* 60 Iowa, 190; Bigler v. Jack, *supra.*

What, then, was the situation? Defendant denies that he knew W. C. Keeline was an habitual drunkard. But the evidence leads to a conclusion to the contrary. It appears that, during the year 1901, especially, Keeline was notorious in Council Bluffs for his habits. He was drinking continuously, neglected his business, that of a butcher, and

was frequently in jail, not only for being drunk, but for abuse of his wife and children; such abuse being at times brutal in the extreme. On one occasion, at least, he became so far prostrated and helpless from the use of liquor as to make it necessary to take him to a hospital. All these things were heralded in the newspapers of the city. Defendant addressed him by the familiar title of "Billy," and previous to the occasion in question had frequently loaned him money, and for that matter had closed him out of business during the year by taking all his available property, including his tools, to pay debts arising out of money borrowed. Defendant had lived in Council Bluffs for years, and says he was well acquainted in the city. In view of this, and of his acquaintance and business relations with Keeline, it is not conceivable that he (defendant) had failed to learn of the habits, and, as well, the financial standing, of Keeline. We think it is common knowledge that persons engaged solely in the business of loaning out their own money, making a specialty of chattel loans — and it is thus the defendant speaks of himself — take pains to advise themselves respecting the character, habits, and financial standing of those with whom they deal. To such consideration we add the direct evidence concerning knowledge on the part of defendant of the habits of Keeline, and then by an easy step reach the conclusion that, in respect of the transaction in question, defendant was not only dealing with a common drunkard, but he knew it. On the occasion in question Keeline was at Clark's office to borrow money. It is made clear that he did not care how he got it, and it is not beyond belief that he blindly acquiesced in whatever was said by defendant as to the form of the transaction. As to plaintiff, no reason appears for rejecting her statement to the effect that she was present and acting in the transaction because she believed her husband would carry into execution his threat made to kill her if she refused; moreover, that, having signed her name to such papers as were placed before her, she went away be-

lieving she had done no more than to further weight down her home by incumbrances, and this, notwithstanding a technical explanation had been made by the attorney in her presence respecting the form of the transaction.

Now, additional to the testimony of plaintiff, we have the evidence as to the value of the property — a subject important to be considered in the case.   The witnesses are 2. SAME: in-      not in accord on the subject, but for the puradequacy of poses of our question we may take the estiprice. mate of the defendant himself.   Shortly before the commencement of this action, he entered into an optional contract to sell it for the sum of $6,000.   It will be remembered that the amount advanced to plaintiff was $1,000 — this in addition to the assumption of the mortgage indebtedness which amounted to $2,200.   Gross inadequacy of price is always a strong circumstance against the theory that an absolute sale was intended.   *Rogers v. Davis,* 91 Iowa, 730. Looking at the immediate circumstances in the light of what followed, we are impressed with the belief that defendant himself was not only conscious of the understanding of plaintiff, but that on his own part he regarded the transaction as in truth a loan.   If no more than conscious of the understanding of plaintiff, it is certain that he cannot be permitted to have a recovery on any other basis than according to such understanding.   This is but the expression of an elementary rule.

But, aside from this, it appears that in a few months W. C. Keeline came back from Colorado, having in the meantime squandered all his money.   If, now, defendant considered that he had full ownership of the property, why did he make a further loan of $60 to Keeline taking the property as security therefor?   Such was the intention of the transaction clearly enough, whatever may be said of the legal effectiveness thereof.   So, too, if the full and unconditional owner of the property, as he would have it believed, why did he later on, and before the option had expired, advance to the

Keelines the further sum of $600, without a penny of consideration, and providing only by a new contract of option extending time to September, 1903, for repayment in the event plaintiff elected to repurchase? Defendant attempts to explain this by saying that it was intended on his part as a benefaction; that the money was given out of his kindness of heart. Under any ordinary circumstances this would appear absurd. When we consider the fact, as shown by the evidence, that less than a year before he had induced Keeline to make him a bill of sale of his butcher shop and tools — thus stripping the latter of every vestige of tangible property, and his means of livelihood — to satisfy a debt of borrowed money, and had then turned around and sold such property for nearly twice the amount of his debt, all of which he retains, his present attempt at explanation becomes ridiculously absurd. In our view there is no reasonable way to account for the conduct of defendant, except upon the theory that he regarded the legal title vested in him as no more than a security.

This view is enforced by the further fact of the deed executed to defendant by W. C. Keeline for himself, and as attorney for his wife, after the last option contract had expired by its terms. According to the theory advanced by defendant, he was already the owner of the fee, and every right of plaintiff to repurchase was gone. There was no possible occasion for a further deed or the payment of a further sum of $100. So, too, defendant upon appearing in court as a witness, brought with him a statement of his account with the Keelines. Therein was charged up the moneys advanced and interest on the several amounts computed from the date of advancement down to about the time this action was commenced. There could have been no occasion for making computation and charges of interest, if there was nothing in the way of a loan. And there was a charge made in 1903 of $25 as for an attorney fee paid out. It does not appear what the services rendered by an attor-

ney were, but the charge serves to indicate that defendant believed the Keelines had some interest in the property other than a mere option to purchase upon paying a stated sum:

We do not overlook the circumstance tending to support defendant's theory of the transaction that he was given possession of the property. But such is by no means con-

3. DEEDS: effect of possession.

trolling. And it will be remembered that Keeline was drunk, while plaintiff in her sorrow and terror signed her name to whatever paper she was bid. Moreover, the last hope, evanescent though it might be, seemed at the time to center upon the Colorado mining interest, and Keeline had determined to go West if money could be obtained. Under the circumstances, therefore, but little importance is to be attached to the fact that they went away without any more definite arrangement respecting the matter of possession.

Nothing can be claimed by defendant as against plaintiff for the deed last executed. If there was no other reason, the property was the Keeline homestead, and the evi-

4. HOMESTEAD: conveyance of

dence makes it clear that in fact it was no part of their intention to abandon it. By statute, the homestead cannot be incumbered or conveyed unless the husband and wife join in the execution of the same joint instrument. Code, section 2974. The homestead is community property, so to speak. It is a favorite of the law, and the purpose of the statute was to require the utmost solemnity in the matter of its alienation. It must be by one instrument, and the husband and wife must each concur in the execution thereof. *Lunt v. Neeley,* 67 Iowa, 97; *Seiffert v. Hartwell,* 94 Iowa, 576; *Alvis v. Alvis,* 123 Iowa, 546. Precisely the same reasons for refusing to give force to a conveyance of the homestead, where sought to be accomplished by separate deeds, apply where the attempt is made through the medium of a power of attorney executed by one to the other. In neither case is it a joint act of the parties; that is, a contract of sale participated in by both

and consummated by them jointly in one instrument. The following cases, arising under statute similar to ours, hold for the invalidity of a deed executed by the husband under a power of attorney from the wife: *Gagliardo v. Dumont,* 54 Cal. 496; *Wallace v. Ins. Co.,* 54 Kan. 442 (38 Pac. 489, 26 L. R. A. 806, 45 Am. St. Rep. 228).

Based upon the foregoing propositions, we hold that the title held by defendant Clark stands as security for the repayment of the sum of $1,000 as first advanced; and, as the $600 subsequently advanced was included in the option contract, and came to the hands of plaintiff, that sum should be added. To these will be added only the sums paid by defendant for taxes and repairs, and as interest paid to Hart. Interest on the several amounts will be computed at the rate of 6 per cent. per annum. From the gross amount thus made up there will be deducted the rents and profits received by defendant with interest at 6 per cent. And the plaintiff will be given 90 days from date of final decree in which to make payment of the amount found due from her. The cause is remanded for an accounting and final decree in harmony with this opinion.— *Reversed.*